CRONBERG BROTHERS v. JOHNSON
(No. 1032; Decided July 20, 1922; 208 Pac. 446)

CONVERSION—WHEN DEMAND NOT ESSENTIAL—CONFUSION OF GOODS —DETERMINATION AFTER DEMAND OF PROOF OF CONVERSION, DEMAND FOR NEW TRIAL NOT REVIEWABLE—CREDIBILITY OF WITNESSES—EVIDENCE—DECLARATION OF AGENT AS AFFECTING PRINCIPAL—ADMISSION OF AGENT'S DECLARATION—HARMLESS ERROR— JURY—MISCONDUCT OF JURY—NEW TRIAL—AFFIDAVIT AS TO MISCONDUCT OF JURY—INSTRUCTIONS—MEASURE OF DAMAGES AND CONVERSION.

1. Demand and refusal are not necessary as evidence of a conversion, except when the other acts of defendant are not sufficient to prove it.

2. Evidence that plaintiff's sheep were in defendant's herds, and plaintiff requested a separation and division, and de-

fendant denied the request because refusing to recognize plaintiff's claim of ownership, was sufficient to show that their subsequent detention was a conversion.

3. The trial judge having given the verdict his approval and indorsement by denying new trial, it is not reviewable on the ground that the jury were not entitled to believe the testimony for plaintiff.

4. Declarations of an agent, unless they be made at the time and compose a part of acts done by him for his principal within the scope of his authority, cannot be given in evidence to charge the principal.

5. Error in admitting declarations of defendant's agent that some of plaintiff's sheep were mingled in defendant's herds was harmless, the agent having as a witness for plaintiff testified later from actual knowledge by reason of his presence and observations at the shearing pens, that some of plaintiff's sheep were in defendant's herds, even though his declarations were received as an admission of defendant by his agent.

6. Testimony of the person in charge of shearing pens that plaintiff, claiming some of his sheep were there being sheared with defendant's, asked him to quit shearing till they could be separated, and he refused, was admissible to show effort of plaintiff to get his sheep of witness, the person in temporary possession, relative to the subsequent detention being a conversion.

7. Refusal to strike testimony was harmless; the same testimony being later given without objection.

8. Any error in sustaining objection to introduction of written statement must be held harmless; there being nothing in the record to show its contents.

9. Permitting witness to state on redirect that a written statement claimed to have been made by him before trial, and as to which he was cross-examined, contained nothing conflicting with his testimony, was harmless, the statement not having been introduced, so that the jury were not informed of its contents.

10. When the jury is ordered into custody of officers to be kept together and the order is disobeyed there is a plain violation of the duty owed by the jury to the court and the public; but whether it is a violation of the rights of the parties so that the unsuccessful one shall be entitled to a new trial depends on the question, whether the jury was influenced by others to his prejudice.

11.  Where a jury had been ordered to be kept together and a member thereof went home for a short time by permission of the bailiff, but the separation did not serve as the occasion for the exercise of improper influences, and neither party was prejudiced thereby, an application for a new trial on that ground was properly refused.

12.  Where affidavits are used in support of charges of misconduct of jurors as grounds for a new trial the names of offending jurors should be stated, if possible, in order that the other party may have an opportunity to deny or explain the charges.

13.  Counter affidavits on motion for a new trial for misconduct of a bailiff denying knowledge of the alleged occurrence held to justify finding that the charge was not proven.

14.  The jury in an action for conversion having fixed the value of the property at the time of the conversion as the damages, any error in the part of the charge giving them option to base the damages on any later increased value was harmless.

ERROR to the District Court of Carbon County, VOLNEY J. TIDBALL, Judge.

Action of trover by Samuel W. Johnson against Cronberg Brothers, Inc., for the recovery of damages for the conversion of plaintiff's sheep. There was judgment for plaintiff and defendant brings error. The facts are stated in the opinion.

*M. E. Wilson* and *Brimmer & Brimmer,* for plaintiff in error.

The verdict is not sustained by the evidence; it is not sustained by the testimony of the plaintiff, himself. The alleged count of sheep made at the pens by plaintiff and the witness Quillan was so improbable as to be unworthy of belief. It was physically impossible for the sheep of plaintiff and defendant to become mixed between the count of plaintiff's sheep in April and the count made in May thereafter. Plaintiff never demanded any specific number of sheep from defendant. The testimony of plaintiff's several witnesses was unreasonable and improbable. When a verdict rests upon improbable or impossible evidence, or upon evidence

contrary to the laws of nature and the facts of common knowledge, an appellate court will set aside the verdict and correct the discretion of the lower court. (Zoccolillo v. O. S. L. R. Co. (Utah) 177 Pac. 201.) The court below should have vacated the verdict and ordered a new trial. (Kester v. Wagner, 22 Wyo. 512, 145 Pac. 748; Felton v. Spiro, 78 Fed. 576.) Misconduct of the jury was shown by a large number of affidavits filed in support of the motion for new trial. The court had ordered the jury to be kept together, pursuant to the authority of Section 4498 C. S. 1910. Jacob Helfer, one of the jurors, separated from the jury shortly after midnight and went to his home to look after a cow that had been reported sick. Other acts of misconduct on the part of the individual jurors was found.

Section 4498 C. S. 1910 is a statute peculiar to the State of Wyoming and was not adopted from Ohio as were Sections 4501 and 4502 C. S. 1910, which permit separation of a jury under certain conditions. Members of a jury having deliberately violated the order of the court, the verdict should be set aside. The doctrine of "no prejudice" has no application to the situation as it is here presented. (Shepherd v. Baylor, 5 N. J. L. 954; Nickelson v. Smith, 15 Ore. 200, 14 Pac. 41.) The statute is mandatory. The case of Armleder v. Lieberman, 33 Oh. St. 77, often cited in support of the doctrine that such a statute is directory, did not pass upon this feature of the statute, nor did the Ohio court have before it language such as is contained in Section 4498. The court erred in denying the motion of defendant to strike certain testimony given by plaintiff Johnson relating to a conversation had with one Wolf, who was in charge of the shearing pens, Wolf being the agent of defendant and the conversation being offered and admitted on the evident theory that it constituted admissions of defendant company. The trial court recognized the error in passing upon the motion for a new trial. It was not within the scope of Wolf's authority to bind the Cronberg Company with admissions relative to the ownership of sheep passing through the shearing pens. (2 Jones' Comm. 255; 2 A. & E. Cyc.

L. & P. 163, 164; Goltra v. Penland, 77 Pac. 129, 45 Ore. 254; Norfolk v. Smitherman, 101 S. E. 208; Winchester v. Creary, 116 U. S. 161; 29 L. Ed. 519; Sweeney v. Sweeney, 119 Ga. 76, 46 S. W. 76, 100 Am. St. 159; Wilson v. Bowden, 113 Mass. 423; Whitney v. Wagoner, 87 N. E. 603.)

In the Massachusetts case a note had been left at a bank for collection; statements of bank officials as to the ownership of the note were held inadmissible.

(Surbaugh v. Butterfield, 44 Utah 447; 140 Pac. 757.)

Here it was held that the declarations of a herder of trespassing sheep and cattle that they belonged to defendant and that he was herding them for him, were inadmissible declarations of an agent made while acting within the scope of his authority and in the courts were admissible against the principal.    (Henderson v. Coleman, 19 Wyo. 183; 115 Pac. 439.)

The trial court erred in not permitting the admission of a written statement made by witness C. B. Hunter offered by defendant in the course of Hunter's cross-examination.

Instruction No. 1, permitting the jury to take into consideration the matter of fluctuating value of the sheep in controversy and to find the highest market value that such sheep attained between the date of the conversion and the last date, in the fall of 1917, on which there is evidence of a market value of such property, was erroneous.    The rule of damages was the market value of the sheep on the date of conversion.    The instruction is not applicable to the pleading which does not allege a fluctuating value, and there is no evidence that the sheep had any fluctuating value.

*W. E. Mullen* and *McMicken & McMicken*, for defendant in error.

The cross-examination of the plaintiff Johnson with reference to the allegations of the petition relating to exemplary damages is immaterial in view of the fact that the jury was instructed that the evidence was insufficient to sustain plaintiff's claim for exemplary damages, and no exemplary damages were awarded.    That issue was out of the case when it

was submitted to the jury. The jury was properly instructed as to the credibility of the witnesses, the weight of their testimony, the preponderence of the evidence, and under this instruction, decided the issues in favor of the plaintiffs below. There being evidence to sustain the verdict, a reviewing court will not disturb it. The trial court overruled defendant's motion for new trial, after a careful review of the evidence, finding it sufficient to sustain the verdict. Kester v. Wagner, 22 Wyo. 512; 145 Pac. 748 is not in point. That case was brought to the attention of the court below by repeated references in the argument on the motion for a new trial. The trial court in its discretion denied the motion and this exercise of discretion is not reviewable here. (Edwards v. O'Brien, 2 Wyo. 493.) The disappearance of 1184 head of sheep out of 10,632 head within a period of three weeks, without any of the markers, or "blacks" or "bells" missing from the entire herd, destroys the theory advanced by plaintiff in error that the missing sheep drifted away in a storm. The sheep ranges of the parties to the cause were in the same locality and so situated that it was necessary for the Cronberg herds to pass the Johnson range in going to the town of Medicine Bow. The evidence of the count made by Johnson of his sheep in April is clear and undisputed, as was also the evidence of his count made in the month of May of the same year. The evidence shows that Johnson made every possible effort to have the sheep separated before they were shorn and, failing to secure a shut-down of the shearing plant, plaintiff and witness Quillan made a count and tally of the number of plaintiff's sheep found in Cronberg's herds as they passed through the shearing pens. The evidence of numerous other witnesses showing the presence of sheep bearing Johnson's brand observed by them mingled with Cronberg's sheep at the pens during the shearing operation clearly shows the situation. The value of plaintiff's sheep thus converted by defendant was also clearly shown. The action of a trial court in refusing a new trial will not be disturbed unless there appears an abuse of discretion. (14 Ency. P. & P. 780.)

The Supreme Court will not disturb a verdict based upon conflicting evidence. (Granger v. Lewis, 2 Wyo. 231; Edwards v. O'Brien, 2 Wyo. 493; Kester v. Wagner, supra; Evans v. Cement Co., 21 Wyo. 184; Saratoga v. Jensen, 20 Wyo. 323; Irrigation Co. v. La Porte, 26 Wyo. 250; Caswell v. Ross (Wyo.) 188 Pac. 677.)

The refusal of a trial court to grant a new trial is not assignable as error unless an abuse of discretion is clearly shown. (Stockgrowers v. Gray, 24 Wyo. 18.) An abuse of discretion in vacating a verdict and granting a new trial is reviewable. (Kahn v. Trader's Ins. Co., 4 Wyo. 419.)

The alleged misconduct of the jury was presented by affidavits and counter affidavits in the arguments on the motion for new trial. In its denial of the motion for new trial, the court found that while the order of the court requiring the jury to be kept together had been violated, no prejudice resulted from such misconduct. The affidavits relating to the alleged misconduct of the jurors were unworthy of consideration, in omitting to name the jurors complained of. (Cornelius v. State, 12 Ark. 782; State v. Cotts, 39 S. E. 605, 55 L. R. A. 176; People v. Simonds, 23 Cal. 348; Cokin v. State, 20 Ark. 53.)

Where counter affidavits show that no prejudice resulted from the alleged misconduct of the jury, a new trial should not be granted. (Nicholson v. State, 18 Wyo. 314; Woodward v. Leviatt, 107 Mass. 453; Johnson v. Witt, 138 Mass. 79; State v. Gay, 18 Mont. 51, 44 Pac. 411; State v. Lawrence, 70 Vt. 324; State v. Cotts, 49 W. Va. 615, 39 S. E. 605.)

The contention that Section 4498 C. S. 1910 is mandatory is without merit, in view of the fact that it was enacted as a territorial statute in 1869, while Sections 4501 and 4502 C. S. 1910 were adopted from the State of Ohio in 1886, and being a more recent expression of the legislature, conflicts with the provisions of an earlier statute. Moreover, the case of Cook v. Territory, 3 Wyo. 110, decided on appeal on October 9, 1884 prior to the adoption of the Ohio statute referred to in considering the early territorial stat-

ute, held that the separation of one or more of the jurors from the others and the conferring with outside parties on subjects not connected with the case, would not prevent a fair trial. This case, Cook v. Territory, involved a capital offense and defendant was convicted of murder in the first degree.

The question was before this court in Nicholsen v. State and decided against contentions of plaintiff in error as in the case at bar. The decision in the case of Armleder v. Lieberman, 33 Oh. St. 77, decided by the Supreme Court of Ohio before the adoption of the statutes in that state, was to the effect that where it was shown that some of the jurors separated from the rest for an innocent purpose, or because of illness or other unavoidable reasons, that fact will not vitiate the verdict. (16 R. C. L. 116, p. 305, 12 Cyc. 724; State v. Daugherty, 55 Mo. 69; State v. Curliles, 57 Mo. 102; C. L. & P. Co. v. Howard, 23 N. E. 317; Nichols v. Nichols, 136 Mass. 256.) The general rule is that a new trial will not be granted when it clearly appears that defendant has not been injured nor prejudiced by the alleged misconduct. (Shepherd v. Baylor, 5 N. J. L. 594.)

Plaintiff in error complains of prejudicial testimony of witness Wolf and the possible effect of this testimony as an admission by Wolf as agent of defendant. The entire matter was discussed at length in the arguments upon the presentation of defendant's motion for new trial. Wolf was, in fact, the chief employee of defendant at the shearing pens, there for the purpose of looking after the sheep, keeping the tally and the bands straight. Chris Cronberg, a witness for defendant, so testified. Wolf was undoubtedly the agent of defendant charged with the duty of looking after the sheep being sheared at defendant's pens. It was the duty of Wolf to know that none but Cronberg sheep were being received and shorn during the period in question. Moreover, Wolf gave independent testimony, from personal knowledge gained through observation, and incident to his presence at the pens during the shearing operations. The conversation between Wolf and Chris Cronberg, after the

shearing was over, was repeated by Chris Cronberg, himself.

The only instructions complained of in the arguments, was Instruction No. 1 given by the court with reference to the value of the converted sheep. There was evidence that the sheep had fluctuating values. This instruction was supported by the decision in the case of Hilliard Flume Co. v. Woods, 1 Wyo. 404, wherein it was held that where the price or value of converted property fluctuates between the conversion and the trial, the jury may find the highest market value which the property has reached at its intended market during that interval. However, the jury did not find as high a valuation as might have been found from the evidence. The value of the property was fixed as of June 28th, 1917, the date upon which demand was made by plaintiff on defendant for the property. The jury kept well within the lines of proof on the question of valuation and measure of damages.

Errors assigned in a motion for new trial but not argued before the trial court will be deemed to have been waived. (Dolan v. Church, et al., 1 Wyo. 187.) The purpose of a motion for new trial is two-fold: First, to obtain a re-examination of the questions and thus afford the District Court an opportunity to correct its own error; and second, to lay the basis for an appeal to the Supreme Court. (Casteel v. State, 9 Wyo. 274.) A verdict will not be disturbed unless it be clearly and manifestly against the weight of evidence. (O'Brien v. Foglesong, 3 Wyo. 57; Edwards v. Murray, 5 Wyo. 153; Hester v. Smith, 5 Wyo. 291; Jackson v. Mull, 6 Wyo. 55; Lonabaugh v. Morrow, 11 Wyo. 17.)

To justify the granting of a new trial on the ground of misconduct of the jury, such misconduct must be gross. (Long v. State, 95 Ind. 481; Carter v. Ford, 85 Ind. 180; Whitchell v. State, 23 Ind. 89.) It must clearly appear that the complaining party was prejudiced. (Luck v. State, 96 Ind. 16; Messenger v. State, 152 Ind. 227.) In the absence of a showing of prejudice courts will not interfere with the

verdict.   (State v. Spears, 134 La. 483; 64 So. 385; State v. Harper, 101 N. C. 761, 7 S. E. 730; Gamble v. State, 44 Fla. 429.)

KIMBALL, Justice.

In an action of trover, the plaintiff, Samuel W. Johnson, claimed damages for the conversion of 907 head of his ewe sheep by the defendant, Cronberg Bros., Inc., a corporation. A trial by jury resulted in a verdict for plaintiff, and from the judgment upon the verdict the defendant brings error.

In the spring of 1917 both plaintiff and defendant were engaged extensively in the business of sheep raising. They ranged their sheep in the same vicinity, some of their lands adjoining. There was evidence that on April 28, 29, and 30, 1917, plaintiff's sheep, consisting almost entirely of ewes, which for some time had been in his hay field, were counted, divided into herds and moved to the open range; on May 20, 22 and 23 they were brought from the range to the home ranch and counted again, disclosing a loss between April 30 and May 20 of about 1200 head. Some of these were accounted for, leaving the claimed loss about 1000 head, which a search of the surrounding country failed to discover. Shearing pens and equipment owned by defendant, and used that season by plaintiff, defendant, and others, were located at Medicine Bow, where shearing began about June 20. The plaintiff testified that on June 29, while some of defendant's sheep were in the pens for shearing, he counted among them about 500 of his missing ewes, bearing his paint mark or "brand;" that on June 30, under the same conditions, he counted 272 head, and later, between June 30 and July 9, he counted others. The total number claimed to have been so observed and counted was 904 head, and three others were claimed to have been seen about the same time in a herd of defendant's sheep met upon the highway. A camp-mover then employed by plaintiff testified that he counted with plaintiff on June 29 and 30 and that their counts agreed. Another camp-mover testified that he saw 21 head of plaintiff's sheep in defendant's herds at the shearing

pens the last days of June or the first days of July. Wolf, the foreman in charge of the shearing pens, testified that of 1275 sheep sheared as defendant's on June 29 and 30, about one-third were plaintiff's. One of the shearers testified that he observed ''a good many'' of plaintiff's sheep mixed with defendant's. Another, that he saw ''quite a number.'' Two other witnesses testified that they saw small numbers of Johnson's sheep mixed with defendant's sheep at the pens, one of these witnesses saying that he saw 25 head bearing plaintiff's mark, and ''didn't want to see any more.'' Another witness testified that between May 21 and 25 he rode through one of defendant's herds on the range and that there were as many sheep with plaintiff's mark as with defendant's, and that later he observed the same condition at the shearing pens. The plaintiff testified that on June 29, on discovering his sheep in defendant's flocks, he asserted his claim and requested the men in charge of the shearing pens and of the sheep to stop the shearing and permit a separation of the sheep; that from that date to July 9 he made several similar requests of the Cronberg brothers, the managers of the defendant corporation, and that all his efforts in that regard were futile. With the exception of one or two head the defendant denied at the trial that any of the plaintiff's sheep were in its herds.

It is contended that the evidence is insufficient to support the verdict. It is first complained that there was not sufficient evidence of a demand and refusal. The plaintiff refused to testify that he demanded possession of a definite number of sheep, but did testify that he claimed ownership of a large number then in defendant's herds, and requested a separation and division. His request was denied by defendant, not because it claimed the right to keep sheep belonging to plaintiff, but because it refused to recognize his claim of ownership. A demand and refusal are never necessary as evidence of a conversion, except when the other acts of defendant are not sufficient to prove it. (Cooley on Torts, p. 531; Gilmore v. Newton, 9 Allen (Mass.) 171, 85 Am. Dec. 749; Badger v. Batavia Paper Mfg. Co., 70 Ill. 302; 26

R. C. L. 1123; 38 Cyc. 2032-2033.) The allegation that defendant converted the sheep is the ultimate fact which the plaintiff is required to prove. (Daggett v. Gray, 110 Calif. 169, 42 Pac. 568; Baltimore & O. R. Co. v. O'Donnell, 49 Oh. St. 489, 32 N. E. 476, 21 L. R. A. 117; 34 Am. St. Rep. 579; 38 Cyc. 2071.) This is not proved in a case like the one at bar, by a mere showing of the mingling of the sheep which may have been without the fault or knowledge of defendant. (Van Valkenburgh v. Thayer, 57 Barb. (N. Y.) 196.) A subsequent demand and refusal would be evidence of conversion. So, also, would any other act of defendant in denial of plaintiff's right. The evidence of the plaintiff's efforts to obtain the property and the defendant's refusal to surrender it was sufficient for this purpose. (See Cutter v. Fanning, 2 Ia. (2 Clarke) 580, 591.) If plaintiff's sheep were in defendant's possession on June 29, the evidence of demand and refusal was sufficient to show that their subsequent detention was a conversion. The real issue was whether defendant had the property, not whether it had a right to retain it.

The other arguments in support of the contention that the verdict is not sustained by the evidence are all based upon the assertion that the jury was not entitled to believe the testimony offered in proof of facts essential to the plaintiff's case. The jury were the sole judges of the credibility of the witnesses, and it is plain that if they believed plaintiff's testimony as to the presence of his sheep in defendant's herds at the shearing pens, their verdict is sustained by substantial evidence. It is not necessary to cite the many decisions of this court holding that, in such a case, the trial judge having given the verdict his approval and endorsement by denying a new trial, the judgment will not be disturbed on such ground. It seems to be contended that some different rule is to be gathered from the decision in Kester v. Wagner, 22 Wyo. 512, 520, 145 Pac. 748. In that case the trial court had granted a new trial, and in affirming that action this court took occasion to quote from Dewey v. Chicago etc. R. Co., 31 Ia. 373 a statement of the rule to which

we have just adverted, with the reasons for it, and also the reasons why the rule does not have any application to *nisi prius* courts when acting upon motions for new trials. That case is valuable as a guide to trial judges in acting upon such motions where there is a doubt as to the sufficiency of the evidence, but it contains nothing to question the rule limiting our right to disturb a verdict and judgment upon conflicting evidence. There is nothing in the record here from which we would be authorized to assume that the judge below in holding that a new trial should not be granted on this ground acted with any misconception of his right and duty as discussed in that case.

It is alleged that there were several errors in rulings upon the admissibility of evidence. The plaintiff was permitted to testify that on June 29 Wolf, the foreman of the shearing pens, said to plaintiff, ''There is several of your ewes there in the sheep.'' It seems that this testimony was offered and received upon the theory that Wolf was an agent of defendant who could bind the latter by his admissions. If Wolf were defendant's agent, his only duty with respect to the sheep was to take temporary possession of them for the purpose of shearing. Any statement or declaration he may have made as to their ownership should not have been received as an admission of his principal in an action where the question of the title to the sheep was in issue. Declarations of an agent, unless they be made at the time and compose a part of acts done by him for his principal, within the scope of his authority, cannot be given in evidence to charge the principal. (Henderson v. Coleman, 19 Wyo. 183, 210, 115 Pac. 439, 1136.) Wolf's statement to plaintiff was outside the scope of his authority, and did not explain or characterize any act performed by him as the agent of defendant. (Wilson v. Bowden, 113 Mass. 422; Charter v. Lane, 62 Conn. 121, 25 Atl. 464; Goltra v. Penland, 45 Ore. 254, 77 Pac. 129; Surbaugh v. Butterfield, 44 Utah 447, 140 Pac. 757.) The evidence, therefore, was hearsay, and should not have been admitted. The trial judge, in denying the motion for a new trial, indicated that he was then of

opinion that there had been error in admitting this evidence, but that in view of the other evidence in the case, the defendant had not been prejudiced. We are in accord with that view. As we have said, Wolf, as a witness for plaintiff, testified later in the trial to the fact of the presence of plaintiff's sheep in defendant's herds at the shearing pens, and we think in view of that direct testimony to the fact the admission of the hearsay evidence was not harmful error. (4 C. J. 999; Protection L. Ins. Co. v. Foote, 79 Ill. 361; Southern R. Co. v. Fisher, 199 Ala. 377, 74 So. 580; Strachbein v. Gilmer (Tex. Civ. App.) 202 S. W. 333; Ohio & K. R. Co. v. Beuris, (Ky.), 146 Ky. 612, 143 S. W. 16; Chancellor v. Stephens, 136 Ark. 175, 206 S. W. 145.) It is claimed, however, that because the evidence of Wolf's statement to the plaintiff was offered and received as an admission of the defendant by its agent, it was or may have been accepted and weighed by the jury as something more than a mere hearsay statement that plaintiff's sheep had been seen in defendant's herds. Other evidence disclosed fully the nature of Wolf's employment, and that when he made to plaintiff the questioned statement he spoke not with any authority, expressed or implied, to bind the defendant, but merely stated a fact which he claimed to have learned by reason of his presence and observations at the shearing pens. This was made clear by the later testimony of Wolf himself. It then appeared beyond question that he claimed to have actual knowledge of plaintiff's sheep in defendant's herds, and that whatever statements he made in regard to that fact, either then upon the stand or theretofore to the plaintiff, were based solely upon that knowledge. If the jury believed that he saw the sheep there, they were no doubt influenced by his testimony. If they did not believe that he saw them, it would be fanciful indeed to suppose that the hearsay testimony received any consideration to defendant's prejudice.

It is claimed there was error in permitting the witness Wolf to testify that on June 29 at the shearing pens the plaintiff, claiming that some of his sheep were there being

sheared with defendant's, asked the witness to quit shearing until the sheep could be separated, and that the request was denied. Testimony of the plaintiff as to the same conversation had been admitted previously without objection. No reason is suggested why this testimony was not relevant to show the effort by plaintiff to obtain his sheep of the witness, the person then in temporary possession of them. We think it was admissible for that purpose, for the same reasons that other evidence of a demand was admissible.

The witness Wolf was asked also to relate a conversation had by him with one of the Cronberg brothers about the time shearing was completed at Medicine Bow. There was no objection to the question, nor any motion to strike the answer. An "objection" to a part of the answer was interposed and overruled. Later, without objection, the witness gave in substance the same testimony. The ruling of the court upon the objection, even if it were entitled to be treated as a motion to strike the part of the answer to which it had reference, will not be held prejudicial error, in view of the fact that the same testimony, unchallenged, appears later in the record. We may add that we think the testimony in question, even if improper, was too unimportant to have affected the verdict.

Two of plaintiff's witnesses were cross-examined at length with reference to written statements claimed to have been made by them before the trial. These statements were never received in evidence, and there is nothing in the record to inform us of their contents. One of them was offered in evidence, and an objection on the ground that it had not been properly identified was sustained. As we do not know the contents of the statement, we must hold that the error, if any, in sustaining the objection to its introduction was not harmful. The other statement was never offered in evidence, but upon re-direct examination of the witness who made it he was asked whether he found that it contained anything in conflict with his testimony. Over objection he was permitted to answer that he believed not. Conceding that this testimony was improper, we cannot

see how the jury could have been influenced by it, as they, like us, were not informed of the contents of the statement, and we hold therefore that the defendant was not prejudiced by the answer of the witness.

The trial began April 9 and ended April 15, 1919. The jury were kept together under the order of the court pursuant to Section 5768, Wyo. C. S. 1920, the plaintiff having refused to consent to their separation. Misconduct of the jury and of the bailiffs who had them in custody was a ground of the motion for a new trial. The charges of misconduct were supported by affidavits filed by defendant and to deny or explain them the plaintiff filed affidavits of eleven of the jurors, the two bailiffs and others. The most serious of the charges, and the only one argued at length, is based upon an occurrence on the night of April 12, after the evidence was concluded, but before the jury were given the instructions of the court. One of the jurors had recently bought a valuable cow to supply milk for his baby who was three months old and in delicate health. On the night mentioned, the juror's wife telephoned that the cow was seriously sick and likely to die. Desiring to make an effort to save the cow, the juror, about midnight, obtained permission of one of the bailiffs to go home for that purpose. His departure was observed by parties who reported it to the manager of the hotel where the jury was being kept, and he in turn notified the bailiff. Thereupon the bailiff, in company with two other jurors, went to the home of the absent juror, where they found him just as he returned to the house from the barn where he had ''doctored'' the sick cow. He had been absent from the custody of the officer less than 45 minutes. During his absence he talked with no one except his wife, and in his conversation with her nothing was said about the case on trial. A consideration of the affidavits, relating to this separation warranted the belief that the foregoing were substantially the facts, and it seems clear that those facts justified the trial court in his conclusion that no prejudice resulted to the defendant. It may be conceded that the separation constituted misconduct on

the part of both the juror and the bailiff who permitted it, and might have been punished as a contempt of court. It is contended that a separation such as this being shown, the verdict is vitiated by the misconduct, and the question of prejudice to the unsuccessful party is not a proper inquiry. Our attention is called to the case of Shepherd v. Baylor, 5 N. J. L. 827, where the misconduct of the jury was so gross that it was said that their motives as well as their verdict was impeached. It is clear that the misconduct in the case at bar cannot be so characterized, and that later decisions in New Jersey, holding that the verdict will not be set aside for misconduct, unless prejudicial, are more nearly in point. (Crane v. Sayre, 6 N. J. L. 110; Oram v. Bishop, 12 id. 153; State v. Cucuel, 31 id. 249, and Baizley v. Welch, 71 id. 471, 60 Atl. 59.) Counsel cite also Green v. State, 97 Miss. 834, 53 So. 415, where it was held that a juror had been exposed to improper influences; Cantwell v. State, 18 Oh. St. 477, where, in the trial of a felony case the court neglected to follow the statute directing that the jury be kept together; Nickelson v. Smith, 15 Ore. 200, 14 Pac. 40, where the jury after returning a verdict, were permitted to separate, and later to re-assemble, and return a different one, and State v. Church, 7 S. D. 289, 64 N. W. 152, which, as explained in Edward Thompson Co. v. Gunderson, 10 S. D. 42, 71 N. W. 764, holds that where the separation is such that a juror might have been improperly influenced by others, there is a presumption of prejudice and the burden is upon the party seeking to sustain the verdict to show that such influence was not exercised to the prejudice of the other party. None of these cases announces a principle that would authorize the granting of a new trial on this ground in the case at bar. When the jury are ordered into the custody of officers to be kept together, and the order is disobeyed, there is a plain violation of the duty owed by the jury to the court and the public, but whether it is a violation of the rights of the parties, so that the unsuccessful one shall be entitled to a new trial, depends on the question whether the jury was influenced by others to his prejudice.

(2 Thompson on Trials, § 2549; 38 Cyc. 1821; 29 Cyc. 806; 20 R. C. L. 247.) From an examination of the cases it will be seen that in most jurisdictions, including Wyoming (Nicholson v. State, 18 Wyo. 298, 106 Pac. 929), an improper separation, even in capital cases, is not *per se* ground for a new trial. In the case at bar, as it was made to appear satisfactorily, that the separation did not serve as the occasion for the exercise of improper influences, the trial court was right in holding that the defendant was not prejudiced, and in denying a new trial.

The affidavits in support of other charges of misconduct failed to set forth the names of the offending jurors, though it appears that their names, if not known to the affiants, could easily have been ascertained. Such charges might have been disregarded as too indefinite. Where it is possible to do so, the names of offending jurors should be stated in order that the other party may have an opportunity to deny or explain the charges. (Cornelius v. State, 12 Ark. 784, 810; State v. Cotts, 49 W. Va. 615, 39 S. E. 605, 55 L. R. A. 176.) However, the affidavits filed by the plaintiff did undertake to deny these charges, and were sufficient to justify the finding that the acts alleged as misconduct either were not proved or were such as did not influence the jury in arriving at their verdict. There is no reason to suppose that the one juror whose affidavit was not produced, could have furnished any further enlightenment to the court.

It is charged also that one of the bailiffs (not named), in the presence of Dr. Kell and two jurors (not named), made statements favorable to plaintiff's case. The affidavits of the bailiffs, Dr. Kell and the eleven jurors, denying knowledge of such an occurrence, were sufficient to justify the court in finding that the charge was not proved.

The last point urged in the brief is the alleged error in the instruction on the measure of damages. In this instruction, the jury were first told, in substance, that if they found that property of the plaintiff had been converted by defendant, the measure of damages was the value of the converted property at the time and place of conversion, not exceeding

$18,140.00, the actual damages claimed, with interest from that time. The instruction continued with the following: "* * * or, if you find from the evidence that said property was of a class having a fluctuating value, it will be proper for you to allow as actual damages the highest market value which said property or like property may have reached as shown by the evidence, during the interval of time between such conversion and the last date in the fall of 1917 of which there is evidence of market value of such property at the place of such conversion, not exceeding $18,140.00, with interest thereon at the rate of eight per cent per annum from such time as you may find such highest market value to the time of the rendition of your verdict."

It must be conceded that the first part of the instruction stated correctly the general rule for estimating damages in trover cases. The defendant objected particularly to the quoted part, which doubtless was given on authority of Hilliard Flume Co. v. Woods, 1 Wyo. 400, permitting the jury to fix higher damages if they found that there had been an increase in the value of the property after the time of conversion, and the overruling of that objection is the only error claimed and argued here with reference to the instructions.

The question of exemplary damages, though raised by the petition, was eliminated by the court's instructions. The verdict was for $14,027.50, with interest from June 28, 1917. The defendant filed with its motion for a new trial the affidavit of one of the jurors from which it appears that the amount stated in the verdict was the total value of 905 head of sheep at $15.50 each. There is no contention that the evidence was not sufficient to support a finding that during May and June, 1917, the sheep were of that value. Undoubtedly, the date at which interest commenced to run was the date on which the value was fixed. It is clear, therefore, that it was decided by the verdict that the defendant had possession of and converted a number of plaintiff's sheep, which, on June 28, 1917, were of the value stated. We think it clear, in consideration of the evidence, that it

was decided also that the sheep were converted on that date, which was approximately the date when the defendant was informed of the plaintiff's claim. The plaintiff did not undertake to prove that defendant's possession, before that time, was not innocent, but relied upon the evidence of demand to establish the conversion. The importance of that evidence for that purpose was emphasized throughout the trial. The defendant complained that as the petition alleged a conversion on May 20, it was surprised by the evidence tending to prove that it occurred June 28, and defendant does not contend now that there was any evidence to support a finding that there was a conversion before the latter date. In other words, the trial was had upon the theory that the conversion, if any, occurred when the defendant's possession of plaintiff's property became tortious by the detention of it after demand, which was certainly not earlier than June 28. The option given by the instruction to base the amount of damages upon the supposed evidence of an increased value after the date of conversion was not exercised by the jury, who, following the first part of the instruction, chose to fix the value at the time of conversion. Obviously, it is unnecessary to inquire whether the other part of the instruction was erroneous.

*The judgment is affirmed.*

BLUME, J., concurs. POTTER, Ch. J., concurred in the result, but on account of his illness has not seen the written opinion.