**BRASEL AND SIMS CONSTRUCTION CO.,**
a Wyoming Corporation, Appellant
(Defendant below),

v.

**NEUMAN TRANSIT CO., Inc., a Wyoming
Corporation, Appellee (Plaintiff below).**

No. 3090.

Supreme Court of Wyoming.

Jan. 31, 1963.

---

Robert R. Rose, Jr., Casper, for appellant.

J. Reuel Armstrong and K. W. Keldsen, Rawlins, for appellee.

Before PARKER, HARNSBERGER, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Neuman Transit Company, Inc., a trucker, sued Brasel and Sims Construction Company, a road contractor, for $9,367.90 damage occasioned on September 5, 1959, when plaintiff's Autocar tractor and Freuhauf tank semi-trailer upset and rolled over while its driver was attempting to negotiate a portion of a detour built by defendant. The vehicle, eight feet wide, fifty-nine feet, ten inches, long, was carrying gasoline and weighed 73,000 pounds gross.

The complaint alleged that the defendant carelessly and negligently constructed around, over, and across the principal road under construction a single-lane detour roadbed consisting of soft dirt fill insufficient to hold the weight and too narrow for the passage of vehicles thereon, that defendant knew said detour was unsafe and dangerous and failed to provide proper warning, and by reason of such negligence plaintiff was damaged. Defendant denied generally and alleged the negligence of the driver.

At the pretrial, it was agreed between the parties that the detour in question was constructed and maintained by the defendant.

The cause was tried to a jury which returned a verdict in the amount sought by plaintiff. When a motion for new trial and for judgment notwithstanding the verdict was denied, defendant gave notice of appeal.

### Motion to Dismiss

Plaintiff has moved to dismiss the appeal on the ground that the notice was not filed within the time required by rule. The dates significant to the motion are: May 23, 1961, entry of judgment; May 29, defendant's motion for new trial and for judgment notwithstanding the verdict; June 29, order of court issued at defendant's written request extending to August 23 the time for determination of said motion; August 21, hearing on the motion, the court taking the matter under advisement; October 11, entry of order overruling defendant's motion for new trial and for judgment notwithstanding the verdict; November 8, filing of notice of appeal.

Plaintiff argues that under Rule 73(a), Wyoming Rules of Civil Procedure, an appeal must be taken within thirty days from the entry of judgment, and under Rule 59 (f), Wyoming Rules of Civil Procedure, a motion for new trial if not determined within sixty days is considered denied, hence the judgment here was final against defendant on August 23 and the time for filing the notice of appeal expired within thirty days thereafter.

Defendant responds that it properly joined motion for directed verdict with a motion for new trial under the provisions of Rule 50(b), Wyoming Rules of Civil Procedure, that the court on August 21, at the time of the hearing on the motion, requested briefs, that counsel for both litigants presented no objection, agreed to furnish them, that this matter was first raised in plaintiff's memorandum of authorities on September 12, and that plaintiff has waived its right to object to any late filing.

The fact that the motion for judgment notwithstanding the verdict was here joined with the motion for new trial could not in the proper administration of justice be allowed to effect an extension of time

for the appeal. This was not our intention at the time the rules were adopted and any such interpretation of the rules would permit an appellant by the addition of a motion for judgment notwithstanding the verdict to effect a delay. Nevertheless, a lack of clarity of Rule 59(f), Wyoming Rules of Civil Procedure, might well be contended because there is no provision as to what occurs after the continuance therein provided. In the instant situation both court and counsel at the time of the hearing of the motion apparently proceeded as if the continuance was to be effective until the matter was resolved by the trial court. Accordingly, the motion to dismiss must be overruled.

### Sufficiency of the Evidence

■ Defendant contends that the verdict and judgment were unsupported by the evidence so that the court erred in denying (1) the motion for judgment at the close of plaintiff's case, (2) a similar one at the conclusion of all of the testimony; and (3) after judgment, the motion for new trial and judgment notwithstanding the verdict. In his argument counsel· recognizes the rule of review frequently announced by this court and well stated in Fisher v. Robbins, 78 Wyo. 50, 319 P.2d 116, 117, 118:

"* * * it is the duty of this court to assume that the evidence of the successful party is true, leaving out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. * * *"

He urges, however, the application of the principle stated in Kester v. Wagner, 22 Wyo. 512, 145 P. 748, 749, where this court in discussing the trial court's duty under a statute which was the predecessor of Rule 59(a), Wyoming Rules of Civil Procedure, said:

"'* * * Those courts ought to independently exercise their power, to grant new trials, and, with entire freedom from the rule which controls appellate tribunals, they ought to grant new trials whenever their superior and more comprehensive judgment teaches them that the verdict of the jury fails to administer substantial justice to the parties in the case. Whenever it appears that the jury have, from any cause, failed to respond truly to the real merits of the controversy, they have failed to do their duty, and the verdict ought to be set aside and a new trial granted.' [Dewey v. Chicago & N. W. R. R. Co., 31 Iowa 373.]"

This rule was reiterated and explained in Long v. Forbes, 58 Wyo. 533, 136 P.2d 242, 244, 158 A.L.R. 224, where it was said:

"* * * The findings of fact, however, are subject to review by the trial judge who, like the jury, has had the benefit of observing the demeanor and deportment of the witnesses. If he concludes that the evidence is insufficient to support the verdict, he should grant a new trial, under principles stated in Kester v. Wagner, 22 Wyo. 512, 145 P. 748. * * *"

However, essential background for the application of this rule includes this court's words in Cronberg Bros., Inc., v. Johnson, 29 Wyo. 11, 208 P. 446, 448, that when a trial judge has given the verdict his approval and endorsement by denying a new trial, the judgment will not be disturbed upon the ground that the jury was not entitled to believe certain testimony; and in Elliott v. Sloan, 38 Wyo. 276, 266 P. 1059, 1061:

"Trial courts have always been clothed with a large discretion in the matter of granting a new trial, and their action will not be disturbed in the appellate court unless that court can clearly and conclusively say that there was an abuse of that discretion. It will take a stronger case to warrant a reversal where a new trial has been granted than where it is denied. * * *"

We consider then the present appeal in the light not only of the trial court's obligation to grant a new trial if the verdict is improper but also the latitude of that tribunal in making its determination.

In arguing that plaintiff did not prove the alleged negligence either directly or by inference, defendant seeks to eliminate any evidence concerning matters not covered by the complaint, contending that "once specific allegations of negligence are relied upon, they must be proven and some other theory of the law * * * may not be relied upon." We doubt if this point is significant, particularly in the light of the provision in Rule 15(b), Wyoming Rules of Civil Procedure, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." See Lore v. Town of Douglas, Wyo., 355 P.2d 367, 370, and cases cited therein.

As to the obligation of defendant here, there was little disagreement. Defendant's superintendent testified that his company had the responsibility for the maintenance and the safety of traffic through and around the construction operation, including that of approaches, crossings, detours, and intersections; and both litigants rely upon Jackson v. W. A. Norris, Inc., 54 Wyo. 403, 93 P.2d 498, 503, 504, for the principle that a road contractor must exercise reasonable care to avoid injury to the traveling public and is governed by the ordinary rules of negligence.

The principal issue between the parties in this appeal resides in the question, Was there negligence on the part of the defendant which was the proximate cause of the accident?

Defendant urges that there was no proof of facts from which the jury might fairly conclude that there was negligent construction and that since the court could not take "judicial notice" that the road gave way the verdict was not sustained by the evidence.

Plaintiff responds that it was unnecessary to produce expert witnesses showing the road to have been unsafe, since the road's failure to do what it was built to do, i. e., hold up the weight of the vehicles traveling over it, was conclusive evidence of improper construction and maintenance. In reviewing these contentions, we observe that there was presented to the jury no standard of care in road building and no appraisal of this road as to safety factors.

Although it is always difficult to discuss the substantiality of the evidence to support a verdict and judgment without delineating all aspects of the controversy, the basic facts upon which the present case must be resolved are not extensive. The accident occurred shortly after plaintiff's heavily laden truck had diagonally crossed a portion of newly constructed road and entered upon a detour, the truck plunging off the right side of the detour and turning on its side. The evidence is obscure as to the distance that the truck went from the time it started to leave the road until it came to rest and the condition of the fill as to disturbance thereafter. The driver said that after he had stopped before the west approach of the detour he proceeded down the fill "approximately around 30 feet," when he felt "the road give a way." He thought the whole unit went at once. The driver said the fill was composed of loose dirt without gravel and was soft and dusty. He knew before he entered it that it was a newly constructed detour. After the accident, the driver said he "saw" where the embankment had given way. Asked to describe this he said, "I just seen loose dirt" toward the back end of the trailer. The investigating patrolman stated that there were indications of sliding dirt to the rear of the truck, caused from the truck or from the give-way on the fill. It was sliding dirt which he called "scuff." He explained this as "A car turning a sharp corner and the indication of the wheel skidding, it leaves an indication of more than the width of the wheel, it leaves a wider surface; and the dirt, as I have in-

dicated on my report here, is in that such manner, that there is an indication of the dirt being pushed over or sliding," in other words, that there was "an indication on the surface of this road that the dirt on the surface was pushed out to the outside and went over the bank." He said there was no cave-in deep enough to measure in the area.

Provencal, a witness whose testimony was criticized by defendant but not effectively challenged, said that he had watched the occurrences from a point on the detour some two hundred feet ahead of the truck; that the minute the right rear tanker wheels hit the soft fill, the cab and tractor went up in the air and down into the gulley and spun over and landed on the left side; that the dirt and substance of the fill folded up and went down the bank, just caved in.

Regardless of the nomenclature used by the witnesses in describing the detour's condition after the upset, there is nothing to indicate that it was then impassable. In an apparent effort to bolster the "cave-in" theory, plaintiff introduced evidence that the patrol grader had worked the detour during the approximately ten minutes the truck driver was away securing a highway patrolman. However, there was no proof that the detour's edge over which the truck had plunged was disturbed by the grader during that interval.

According to uncontradicted evidence, the detour had been compacted by means of roller in a similar manner to that employed in the construction of the new road, and there was also testimony that heavy scrapers of a gross weight of approximately 100,000 pounds had frequently gone over the detour at different times prior to the accident.

Despite the lack of standards as to care in road building, it might well have been contended that the testimony showing the detour to have given way under a truck of this weight driven carefully over the center of the roadway would constitute substantial evidence upon which the jury might find for the plaintiff. Assuming, without deciding, the merit of such a contention, we examine the evidence to see whether or not it shows the truck to have been driven carefully up the center of the detour.

The driver said he stopped before going on the newly constructed highway, then proceeded across it, that he saw a car coming up the detour, stopped, and the car backed off to let him by, that he then went "right straight down the middle of the fill." He at first said that it was only about eleven or twelve feet wide, extending a foot and a half on each side of the vehicle, but later conceded he did not measure the road and did not know how wide it was. Although he knew as he started down the fill that the trailer wheels were following, he said he did not check the position of the wheels by using his right-hand mirror and could not say exactly where the wheels were with respect to the fill. On cross-examination he was asked the following questions:

"Q. And you don't recall turning to the right to let a little foreign car pass you on the new highway? A. No, sir.

"Could you have done it, but don't remember? A. That is right."

The witness Provencal's testimony on this point was:

"Q. * * * As the Neuman vehicle proceeded to cross this fill at the point of the accident, state, if you know, the distance from the left wheels of the Neuman vehicle to the edge of the left edge of the fill? A. He had very little room, and he was riding just as close to center on that road as he possibly could get.

"Q. State what the distance was at this point from his right wheels to the edge of the fill? A. About the same."

Barnett, the investigating patrolman, said the fill was sixteen feet, three inches wide, that if the truck were eight feet wide and went down the center, there would be four

feet, one and a half inches of dirt on each side. He said that the dual tire tracks which he observed "went pretty straight for awhile and cut over to the right side," the scuffing appearing in that area.

The testimony of the first two mentioned witnesses with the reasonable inferences to be drawn therefrom perhaps established prima facie that the detour was inadequate to carry a truck of that weight driven with optimum care and even though the information given by the highway patrolman tended to contradict this, the trial court did not abuse its discretion in denying defendant's motion for directed verdict submitted at the close of plaintiff's case. However, the evidence thereafter presented by defendant in addition to showing that the usual steps had been taken toward compacting the detour purported to show certain facts concerning the driving of the truck which had not been previously mentioned. Several witnesses testified that the dual trailer tire tracks started at a point within the angle between the edge of the new highway and the edge of the detour, or as some of them said, the right rear wheels of the trailer had gone across the crotch of the intersection, and one of the eyewitnesses explained that the truck had gone to the right when meeting a small foreign car on the newly constructed road, and as it continued onto the detour the trailer portion had not followed the tractor but had gone into the soft dirt on the right hand side of the detour and started the upset. This testimony was not effectively challenged. The driver admitted he did not know the position of the trailer at the time of the upset and that, although he did not so remember, he might have turned to the right to let the foreign car pass. At the time the cause was submitted to the jury, certain of the plaintiff's evidence pointed to the fact that the tractor portion, or front end of the truck, was proceeding in the center of the detour, but disclosed nothing concerning the position of the rear end, while the indisputed testimony of the defendant was that the trailer was not following the tractor but went off to the right into the soft material on the shoulder and caused the upset.

It thus appears from all of the evidence and the reasonable inferences that the accident was caused by a portion of the truck being driven on the shoulder of the road. Accordingly, testimony concerning other aspects of the situation, including the lack of warning concerning danger, becomes unimportant.

Plaintiff was entitled to every reasonable and legitimate inference which might be drawn from the evidence, but no inference of negligence can be based upon a mere surmise, guess, speculation, or probability. O'Keefe v. Cheyenne Chamber of Commerce, 56 Wyo. 170, 105 P.2d 279; Galicich v. Oregon Short Line R. Co., 54 Wyo. 123, 87 P.2d 27.

It follows that the trial court should at the close of the evidence have granted defendant's motion. The judgment is reversed and the cause remanded for new trial.