Hon. JAMES BARRETT,
Hon. WILLIAM C. WILSON, } ASSISTANT JUDGES.
Hon. JOHN PROUT,

---

BAGLEY & DODGE *v.* WILLIAM MOULTON.

*Physicians. Medical Attendance. Auditor's Report. Statute of Frauds. Express Promise.*

It is well settled that if evidence be given before an auditor which has a legal tendency to prove a fact in controversy before him, his decision upon the weight and sufficiency of the evidence is conclusive. The evidence in this case is of that character.

The plaintiff, a physician, having attended upon the defendant's daughter at her request, through her last sickness, she being married and of full age, the defendant, after the plaintiff had made several visits, saw the plaintiff and promised to pay his bill which was from the first charged to him. *Held,* that under the circumstances of the case, there was sufficient consideration to support the promise, and that the promise covered all charges both before and subsequent to its being made.

Another ground for holding that the promise covered prior charges, as well as subsequent, is, that this question after first being raised before the auditor was finally waived by the defendant.

BOOK ACCOUNT. The auditor reported as follows:

"The plaintiffs were physicians at the time of rendering the services charged, and were partners at Chelsea. In December, 1863, Mrs. Mary Ann Watson, a married daughter of the defendant, was sick in Vershire, at the house of Mr. Ezekiel Flanders, who had married a sister of the defendant. Mrs. Watson was past the age of majority, and her husband, Jonas S. Watson, was in the army, and his residence was in Gilmanton, N. H. At the request of the sick woman, Mr. Ezekiel Flanders called upon Dr. Bagley, one of the plaintiffs, to come to his house and attend upon 'Mary Ann Moulton,' calling her by her maiden name and saying nothing about her husband. Dr. Bagley commenced attending upon her on the 4th day of December, 1863, and continued till her death, which occurred January 18th, 1864. At the time he commenced attending upon Mrs. Watson, he did not know that she was married, nor that she was of age, nor did he learn these facts at his first visit. When the doctor first learned of the marriage does not definitely appear, but he learned it before he had been in attendance many times. He had previously attended upon her at her father's house before she was married, and before she became of age, and the defendant had paid the bill. On reaching home after the first visit, Dr. Bagley charged his services to William Moulton, the defendant, and continued to do so during the whole time he had the patient in charge. It did not appear that the plaintiff relied upon the defendant's legal liability as father of Mrs. Watson, but he testified, and the auditor finds it to be the fact, that he relied upon what the defendant told him, for his pay in making his charges. He charged his services in the first instance to the defendant, because he knew Mrs. Watson was his daughter, and did not then know that she was married. He continued to charge to him after he learned of her marriage, for the reason, as claimed by Dr. Bagley, that the defendant had agreed to pay him or see him paid.

"At the time Mrs. Watson was taken sick, the defendant was in Canada, and did not return till she had been sick some time. After his return he went to see his daughter once or twice before meeting the plaintiff, Bagley, there. When they did meet does not appear from the testimony, but it was somewhere between the 9th and 20th days of December, 1863. At this meeting the defendant and Bagley went from the sick room into the kitchen, where some suggestion was made by Dr. Bagley that Mrs. Flanders could not take proper care of the sick woman and do her housework. The defendant told Mrs. Flanders that he would get a girl to help her; that he wanted her to take care of his daugh-

19

ter and he would pay her. Mrs. Flanders replied that she did not ask it of him, that Jonas, the husband of the sick woman, would pay it. Moulton then said he would pay the whole bill; would pay Mrs. Flanders and the whole bill. Mrs. Flanders understood him that he would pay the doctor. It did not appear that this conversation was addressed to Dr. Bagley, but was in his presence. On this same occasion, or at the next visit of Dr. Bagley in two days from that time, it did not appear distinctly which, the parties had some conversation out doors, near Flanders's house, about the defendant's daughter, other physicians, etc., when the defendant said he wanted the plaintiff to keep on as before, and he would pay him. During the sickness of his daughter, on one occasion the defendant told one of his neighbors that he had told Dr. Bagley to see his daughter and he would see him paid. It did not appear whether the plaintiff called upon the defendant while attending upon Mrs. Watson to know whether he should charge his services to him or not. Nor did it appear *when* he informed the defendant that he had charged his services to him, but he showed him the bill within a few months after Mrs. Watson's decease. After the bill was presented, and previous to the commencement of this suit, the defendant told the plaintiff that he would lose one-half of the bill if the plaintiffs would lose one-half. On the 23d day of February, 1864, the defendant wrote to the plaintiff, Bagley, saying: ' I thought I would write a few lines to you in regard to doctoring Mary Ann ; but you know, doctor, I am under no obligation to pay you, as she was a married lady, but I think you did the best you could for Mary Ann, and ought to have pay, and I want to know what your bill is and what is the least you will take if I will pay you. I think I will pay you if you will put it down low enough. Please write to me as soon as you get this and let me know what you will do.'

" Mr. Watson had written to Mr. Moulton on the 3d day of February, 1864, asking, among other things, for the amount of expenses of his wife's sickness, including the doctor's bill, which he says he will send money to settle.

" From the foregoing facts the auditor is of the opinion that the defendant is liable to the plaintiffs for their services, and finds for them to recover the amount of their bill, forty-four dollars with interest.

" At the first hearing it was claimed by the counsel for the defendant, that the time of the first meeting between Moulton and Bagley was of importance, or the time when the promise was made, with the view that only so much of the account as accrued after that time, if any, could be collected. But at the last hearing

the auditor was notified that they made no such request and that the exact time of the promise was unimportant, and the auditor leaves it as already found in the first part of this report."

At the request of the counsel for the defendant the auditor filed his minutes of testimony with his report. The defendant excepted to the report :

1st. For that the said report is against the evidence and is not supported thereby ; and reference is made to the minutes of the testimony on file in this case.

2d. From the facts reported by the auditor, the report should have been for the defendant.

3d. It does not appear from the report, nor was there any evidence tending to show, that the plaintiff, Bagley, performed any portion of the services for which this suit is brought, in consideration of any conversation or claimed undertaking of the defendant, or that said Bagley would not have performed said service just the same had there been no such claimed conversation or undertaking. See auditor's minutes on file as above.

4th. For various other matters and reasons appearing on the face of said report.

The case was heard on the report and exceptions thereto at the June term, 1868, PECK, J., presiding, and judgment was rendered thereon for the plaintiffs, to which the defendant excepted.

*A. M. Dickey*, and *B. Martin*, for the defendant.

*William & S. B. Hebard*, for the plaintiffs.

The opinion of the court was delivered by

WILSON, J. The questions in this case arise upon the report of an auditor. It is insisted by the defendant's counsel that the report does not show sufficient facts to sustain the judgment of the county court. The points urged by the defendant in this court relate principally to the testimony, and undoubtedly they were made before the auditor and urged there as matter of evidence, and considered by him as tending to show that the defendant did not become liable to pay the plaintiffs' debt. It is well settled that if evidence be given before an auditor, which has a legal tendency to prove a fact in controversy before him, his decision upon

the, weight and sufficiency of the evidence is conclusive. *Wood* v. *Barney,* 2 Vt., 369 ; *Phelps* v. *Wood,* 9 Vt., 399 ; *Cottrill* v. *Vanduzen,* 22 Vt., 511. This rule is established by the whole current of decisions in this state upon this subject. The evidence detailed by the auditor tends to prove that the services were rendered upon the credit of the defendant, and upon his express promise to pay reasonable charges therefor. We think, from the evidence, the auditor might legitimately find an original undertaking on the part of the defendant to pay the claims. The auditor has found, as matter of fact, that the plaintiffs, as physicians, attended upon the defendant's daughter during her sickness, upon the defendant's credit, and that he promised to pay them for their services, including their services for two or three visits made prior to any express understanding between the parties in relation to payment of the plaintiffs' bill.

The findings of the auditor are not before us for revision, except as to questions of law arising upon the facts found by him, and upon those facts we think the plaintiffs are entitled to judgment. *Clark* v. *Whipple,* 12 Vt., 483. As to the sufficiency of the consideration to support the defendant's promise to pay the whole bill, the facts bring the case within the principle decided in *Roberts* v. *Griswold,* 35 Vt., 496. That was an action on a guaranty that the defendant would hold himself accountable that Griswold should pay the plaintiff for all professional services he had rendered or might render him in the suit. It was there held that there was a sufficient consideration for the guaranty ; that it covered both past and future services of the plaintiff in that suit, and also his disbursements for clerk and court fees in the case. In the case before us we think the defendant's undertaking and promise, though not entered into and made when the plaintiffs commenced rendering their services, should have relation back and cover both past and future charges for doctoring his daughter during that sickness. There is nothing in the case tending to show that the defendant, in his engagement to be accountable for the plaintiffs' services, proposed to limit his liability to payment for services which the plaintiffs should thereafter render ; but, upon the facts presented to us by the auditor, it would seem that the defendant intended

his engagement and promise should cover the whole bill. But there is another ground on which the plaintiffs are entitled to recover for their services rendered before as well as those rendered after the express undertaking of the defendant. It appears that the defendant's counsel, on a former hearing before the auditor, raised the question as to the plaintiffs' right to recover for any services rendered previous to any express understanding that the defendant should be liable to pay any portion of the bill, but it appears from the report that the defendant's counsel finally waived the question and point, thereby leaving the plaintiffs to recover the whole if entitled to recover at all. This being so, the auditor had no occasion to report more definitely as to the amount of the services rendered prior to the defendant's express engagement.

We find no error in the proceeding of the auditor, and the judgment of the county court is affirmed.