## WILDE, STATE EXAMINER, v. AMORETTI LODGE COMPANY, ET AL.

(No. 1859; February 18, 1935; 41 Pac. (2d) 508)

506

For the plaintiff and appellant there was a brief by *Ray E. Lee,* Attorney General; *O. O. Natwick,* Deputy Attorney General, and *Richard J. Jackson,* all of Cheyenne, and *W. E. Hardin,* of Lander, and oral argument by *Mr. Jackson.*

For the defendants and respondents, there was a brief by *G. J. Christie,* of Lander, and oral argument by *Mr. Christie.*

508

*Ray E. Lee,* Attorney General; *W. E. Hardin* and *Richard J. Jackson* in reply.

RINER, Justice.

This case is a replevin action wherein the District Court of Fremont County entered a judgment in favor of the defendants, and the plaintiff has brought the record here by direct appeal for review.

The facts material to be considered are these: That on or about May 17, 1927, the defendant, the Amoretti Lodge Company, a Wyoming corporation, executed and delivered to Amoretti, Welty, Helmer and Company, a firm conducting a banking business at Dubois, in Fremont County, Wyoming, a chattel mortgage upon certain cattle, together with other personal property therein described, the instrument being duly recorded as required by law. This mortgage was given to secure the payment of a promissory note for one thousand dollars, likewise dated May 17, 1927, due November 17, 1927, in favor of the firm aforesaid, and signed by the Amoretti Lodge Company.

Subsequently, and on or about July 19, 1927, the certificate of incorporation of the company last above mentioned was forfeited, and the defendants, E. Amoretti, Jr., and Eloise Amoretti, his wife, the surviving members of its board of directors, as required by law, took over the assets and property belonging to it, as trustees, for the benefit of its creditors and stockholders. On November 25, 1927, John A. Reed, in his official capacity as State Examiner, took charge of the property and business of the banking firm aforesaid, and he and his successors in office have proceeded with the liquidation of its affairs thus assumed, A. E. Wilde, the plaintiff herein by substitution, being now the State Examiner in charge.

Some time during the month of February, 1927, the defendant, the Rocking Chair Ranch company, a corporation, organized under the laws of Wyoming, through its president and manager, Foster S. Scott, purchased from the Amoretti Lodge Company, 78 head of the cattle covered by the mortgage aforesaid, the animals thus obtained and paid for being valued at the sum of fifteen hundred dollars. The defendant, E. Amoretti, Jr., represented the vendor in the transaction. Before payment was made by Scott, he knew there was this mortgage on the cattle, Mr. Welty, one of the members of the banking firm aforesaid, having theretofore cautioned him regarding it. The day Scott paid Amoretti, he talked the matter over with the latter, and Amoretti said that he would "take up the mortgage at once."

On October 9, 1930, the State Examiner, claiming that no part of the indebtedness aforesaid had been paid, except the sum of $50 on account of interest to November 17, 1927, and the sum of $99.98 credited on the principal on November 25, 1927, brought the replevin action above mentioned to recover possession

of the cattle purchased, as already described, by the Rocking Chair Ranch company. Plaintiff's petition, in addition to the usual allegations in such a proceeding, stated that on November 25, 1927, the banking firm aforesaid, became insolvent, and that thereupon, the State Examiner took possession of its assets, and that, as such official, he was entitled to "receive and collect all debts due and claimed belonging to said banking firm." By stipulation entered into between the plaintiff and the Rocking Chair Ranch company, bonds were delivered to the sheriff by each of these parties, as a consequence of which the plaintiff agreed to duly prosecute his action, and the company last mentioned agreed to re-deliver the cattle to the plaintiff if that be so adjudged, and pay all costs and damages that might be awarded against it. The cattle in question remained with the said defendant and some have been sold.

The Amoretti Lodge Company and its trustees above named joined in an answer to plaintiff's petition, which was in form simply a general denial. The Rocking Chair Ranch company also filed an answer which was of similar character. The trial was had to the court with the result as indicated in the first paragraph of this opinion.

It is asserted for the appellant that the judgment entered by the court below is contrary to law and the evidence in the case. The examination we have made of the record, in the light of the legal principles we deem applicable, leads us to think that this contention must be sustained. The defense interposed on the merits seems to have been that the indebtedness, to secure which the chattel mortgage here involved was given, had been paid before the action in replevin was instituted. Before considering this phase of the case, there are several other points urged by respondents

why the judgment aforesaid should not be disturbed here.

Our attention is directed to the orders of the district court dated respectively October 9, 1933, and October 30, 1933, which dealt with the matter of an extension of the time for appellant to file therein his record on appeal, and it is said that these orders do not grant any such extension. Accordingly, the suggestion is made that the record was not filed in time and this court is without jurisdiction to entertain the cause. Each of the orders questioned, after reciting that the official court reporter had made application for "a further extension of time within which to complete and file the transcript of evidence for the record on appeal" in this cause, states "that the time for filing said transcript of evidence be and the same is hereby further extended," and the respective date limits are then given. It is admitted that the record on appeal was filed within the time, as thus finally extended.

It appears from the record before us that the time for filing it in the district court had, before October 9, 1933, been already several times extended by proper orders to that effect, the last of those extensions being to and including October 10, 1933. Each of the two subsequent orders for time extensions were made before the expiration of the time fixed in the preceding one. The criticism made of them is that they mention only extensions of time to file the "transcript of evidence," and not the "record on appeal." In White Automobile Co. v. Hamilton, 29 Wyo. 109, 210 P. 958, it was held that an order granting appellants additional time to prepare and present their "Bill of Exceptions," which was apparently intended as an extension of time for filing the record on appeal, the words "Bill of Exceptions" should be treated as a mere clerical error, and a motion to dismiss the appeal for failure to file

the record on appeal in time should be overruled. In the case at bar, it is perfectly plain, from the recitals of the orders themselves, that the transcript of evidence in the cause was in the course of preparation by the official court reporter, and that additional time was needed to complete it. As a matter of course that would mean, necessarily, that the record on appeal was incomplete, and time was needed to perfect it. The mere fact that improper terminology was thereafter used in the orders should not, we think, deprive the appellant of his right of review, the intention to protect him in the matter by these court orders being quite evident. In so holding, we are but following the principle announced in White Automobile Co. v. Hamilton, *supra*.

It is contended, also, that although it is so alleged in his petition, plaintiff failed to show by any evidence that the banking firm of Amoretti, Welty, Helmer and Company were insolvent when the examiner assumed charge of the firm's affairs. The record, however, discloses that the State Examiner took possession of the assets of said firm on November 25, 1927, and, since that time, has been continuously engaged in the liquidation of its banking business. In the course of the trial, it appears that when counsel for plaintiff undertook to elicit from one of the firm members the circumstances under which its business was turned over to the state official aforesaid, respondents immediately interposed an objection, that the evidence sought to be adduced was immaterial, and, in this view, the trial court seems to have concurred. That being so, respondents can hardly complain now of the absence of such evidence from the record. This rule is a familiar one that "when a party procures the exclusion of adverse evidence, he is estopped to assign as error the fact that such evidence was excluded." 4 C. J. 705, and cases cited.

Again, the banking law of this state operative at the time that official acted, empowered the State Examiner to take over and liquidate the affairs of an insolvent bank. Sec. 10, of Ch. 157, Laws of Wyoming 1925, likewise in force at the time, defined a bank as:

"Any person, firm or corporation (except the national banks) having a place of business within this state where credits are opened by the deposit or collection of money or currency or negotiable paper subject to be paid or remitted upon draft, receipt, check, or order, shall be regarded as a bank or banker, and as doing a banking business under the provisions of this Act."

There is always a presumption in favor of the proper performance of his duty by an officer, and every reasonable intendment will be made in support of such presumption. Throop on Public Officers, Sec. 558, p. 529, says:

"It will always be presumed, that in any official act, or act purporting to be official, the officer has not exceeded his authority; and, if he had power to act only in a certain contingency, that the contingency has happened; where there is no evidence on either side with respect thereto. 'The presumption is that no official person, acting under oath of office, will do aught which it is against his official duty to do, or will omit to do aught which his official duty requires should be done.' "

See, also, Mechem on Public Officers, Sec. 579; McCamey v. Wright, 96 Ark. 477, 132 S. W. 223; 22 C. J. 130, Sec. 69. As it appears that the State Examiner had taken over the affairs of the firm aforesaid, and been in charge thereof nearly three years before this suit was brought, we think that before they could make complaint concerning the matter, the burden rested upon the respondents to show that the State Examiner acted in the premises without the contingency of insolvency on the part of the banking firm aforesaid

arising and that he took possession without authority. That burden was not met.

It is apparently argued that, under the law prevailing in this jurisdiction, the State Examiner is entitled to take charge in case of insolvency of such institutions only, as have complied with the laws governing state banks and banking in this state, and that it appears from this record that the banking firm aforesaid has not complied with such laws. There is no merit in this contention. It was the duty of that official to take possession of the affairs of the bank, as such an institution is defined by the statute above quoted, when insolvent or when voluntarily turned over to him for liquidation. Indeed, for the officers of the institution to permit an insolvent condition to come into existence, is itself an infraction of state law. It is hardly an excuse to relieve a debtor of the duty to pay an indebtedness which he owes a bank, that it is violating the law governing its action in some particular not connected with the debt. The legal profession is thoroughly cognizant with the principle which allows a bank to recover a loan made to a customer, notwithstanding the fact that the loan was consummated in excess of the amount permitted by law to be lent to him. 7 C. J. 832, Sec. 797; 3 R. C. L. 605, § 234.

Finally, it is urged for respondents that the record establishes that the indebtedness of the Amoretti Lodge Company to the firm of Amoretti, Welty, Helmer and Company was paid, or at least that there was such a conflict of testimony on the matter as to warrant the court to make its general finding in favor of the defendants, a finding which, under a well known rule of appellate practice claimed to be applicable, precludes this court from disturbing it.

It appears from the evidence submitted in the cause without dispute, that the Amoretti Lodge Company

had executed and delivered to the banking firm aforesaid, the following promissory notes: On April 5, 1927, a note for $2400, due six months afterward, with interest at 10% per annum from date until paid; this note seems to have been sent to the First National Bank of Omaha for rediscount; on May 17, 1927, the note for $1000, also due six months after date, to secure which the chattel mortgage on the cattle here involved was given; this note remained with the obligee and ultimately came into the possession of the State Examiner.

The Omaha Bank, by its letter of November 23, 1927, returned the $2400 note aforesaid to Amoretti, Welty, Helmer and Company, that note with interest then amounting to $2540.60. On December 6 following, the affairs of the firm aforesaid having been taken over by the Examiner, there was credited in the account of the Amoretti Lodge Company on the firm's books, a note for $1800, signed by Amoretti Lodge Company by E. Amoretti, President, and Eloise Amoretti, Secretary, dated November 18, 1927, due six months afterward, payable to the order of E. Amoretti, Jr., and F. A. Welty (Mr. Helmer of said banking firm having previously died). This note, endorsed by the payees thereof, was sent on to Omaha as a renewal note, in lieu of the $2400 note aforesaid, together with the sum of $740.60 to make up the difference between the face of the new note and the total amount due on the larger obligation. At the time this last transaction occurred, the Amoretti Lodge Company had a credit in its account with the firm aforesaid, in the amount of $1047.11. Deducting this payment of $740.60 left a balance of $306.51 in the account. From this amount, there was thereafter credited on the $1000 note here involved, a payment of $50 for six months' interest and another payment of $99.98 on the principal sum.

The remainder of this balance of $306.51 seems to have been expended in payment of other obligations of the Amoretti Lodge Company. By a check for $1854, dated March 8, 1928, the Amoretti Lodge Company by E. Amoretti, Jr., paid that sum directly to the First National Bank of Omaha, and received from it the note dated November 18, 1927, mentioned above. The foregoing furnishes the substance of the record so far as there is written evidence of any payment on the indebtedness here in question. It is clear thereunder that, other than the two payments, one of $50 interest and the other of $99.98 on principal, nothing else was paid thereon.

As regards the testimony in the record, we have already referred to that of Mr. Scott, the executive officer of the Rocking Chair Ranch company who said, it will be remembered, that E. Amoretti, Jr., at the time he sold the cattle to that company, admitted there was a mortgage on them and promised that he would liquidate that mortgage. Mr. Welty, a member of the aforesaid banking firm, as a witness stated that the $1000 note was never paid; that he had talked with Mr. Amoretti after the bank closed and shortly after the cattle had been sold to the Rocking Chair Ranch company, and Amoretti told him that he owed the note and would pay it. Mr. George Pennoyer, apparently a silent partner in said banking firm, testified that he heard Amoretti tell Welty that he (Amoretti) would pay the note. Mr. W. E. Hardin, one of the attorneys for the State Examiner, called as a witness, stated that about the first of October, 1930, and prior to the filing of this suit, he talked with Mr. Amoretti, and the latter then said in response to a request that Amoretti pay the $1000 note, that "he would pay it, but he couldn't then." Mr. Amoretti, called by the plaintiff as an adverse witness for cross-examination, merely

stated that the $1000 note was paid by the $1800 note of date November 18, 1927. How it did so, he utterly failed to explain. We have seen that the $1800 note was, as a matter of fact, employed for another purpose altogether, and Amoretti must have known it was so used, for he endorsed it and paid it at the Omaha bank. When asked to say whether the $2400 note previously mentioned was not a separate transaction entirely from the $1000 note here in question, he replied "I don't know." As the only witness called for the defense, he testified simply that the $1000 note had been paid and that the Amoretti Lodge Company owed nothing to the banking firm of Amoretti, Welty, Helmer and Company. He did not deny that he had made the statements attributed to him by the several witnesses, as detailed above.

It is now urged that this testimony on the matter of payment is in conflict and, consequently, the finding of the district court in favor of the defendants comes within the protection of the rule that, "where the testimony is conflicting, the finding of the trial court should not be disturbed unless such finding is clearly erroneous or against the great weight of evidence." Williams v. Yocum, 37 Wyo. 432, 263 P. 607, and cases cited. Supplementary of the rule just mentioned is the principle embodied in the language of the court in the case of In re Coburn, 11 Cal. App. 604, 105 P. 924, to the following effect:

"We are fully aware that an appellate court will not reverse a finding if there is a substantial conflict in the evidence; but the evidence, in order to raise a conflict, must be such as to present a fair and reasonable ground for a difference of opinion. The finding or verdict must have meritorious support in the evidence. A few general statements without substantial reasons are not sufficient to raise a conflict."

See, also, Tobias v. Adams, 201 Cal. 689, 258 P. 588.

We are obliged to reach the conclusion that the general finding of the trial court was "clearly erroneous" and "against the great weight of the evidence" in the case. Mr. Amoretti's testimony on this matter of payment of the $1000 note aforesaid was inaccurate, without sustaining facts and of such a general character as not to present a "fair and reasonable ground for a difference of opinion." There was no substantial conflict in the evidence, and the judgment of the trial court must be reversed with instructions to enter judgment in favor of the plaintiff and against the defendant, the Rocking Chair Ranch company, for the amount of the $1000 debt, less the payments credited thereon with interest.

*Reversed.*

KIMBALL, Ch. J., and BLUME, J., concur.