(April Term, 1943)

## LONG v. FORBES

(No. 2216; April 19, 1943; 136 Pac. (2d) 242)

For the appellant, there was a brief by *H. Glenn Kinsley* and *John G. Hutton,* both of Sheridan, Wyoming, and an oral argument by *Mr. Kinsley.*

For the respondent, there was a brief and an oral argument by *R. E. McNally,* of Sheridan, Wyoming.

KIMBALL, Chief Justice.

The appeal was taken by defendant, W. Cameron Forbes, from a judgment on a verdict in favor of plaintiff, Charles D. Long, for the amount found to be due plaintiff for services as manager of a ranch.

Defendant and members of his family were owners of about 5000 acres of land, known as the Beckton Ranch, in Sheridan County, Wyoming. The ranch was maintained partly as a farming and stock-raising enterprise and partly as a recreational resort for the Forbes family and their friends. Defendant had charge of the property as "Managing Trustee" for the owners, but his "opportunities for directing the affairs of the ranch were very scant." He lived in Massachusetts, and visited the ranch twice a year "when he could." It was the custom to employ a local man as manager.

Plaintiff served in that capacity from November, 1929, to October, 1932, under an oral contract of employment for an indefinite time with salary fixed at $150 a month. He alleged that in October, 1932, de-

fendant promised to pay him $50 a month additional, effective as of November, 1929, when he commenced work, and payable on termination of the employment.

Thereafter he continued as manager, drawing $150 a month, until July, 1939, when the employment was terminated by his discharge. He then brought the action for the additional $50 a month promised in October, 1932. Defendant denied that he made the promise, and contended that the original agreement to pay $150 a month continued, without modification, throughout the whole time of employment.

There have been two jury trials each resulting in a verdict for plaintiff for the additional salary as claimed. A new trial was granted by the judge who presided at the first trial. Before the second trial, plaintiff filed an amended petition stating two causes of action. The cause of action of the original petition, based on the contract of October, 1932, was retained as the first cause of action in the amended petition, and there was added a second cause of action on an implied contract to pay plaintiff the reasonable value of services which he alleged he had performed for defendant after October, 1932, in addition to services as manager of the ranch. The second trial resulted in a verdict and judgment for plaintiff on the first cause of action, and for defendant on the second. Plaintiff has not appealed.

The main question is the sufficiency of the evidence to support a finding that defendant made the promise of October, 1932.

When plaintiff became manager of the ranch in 1929 he succeeded one Frazier whose services had not been satisfactory. Under his management the property had been neglected for two or three years. Frazier, however, had been paid a salary of $200 a month, a fact that came to plaintiff's knowledge at some time before October, 1932. In the spring of 1932, when conditions

affecting the ranch business were pretty bad, plaintiff reduced all salaries of the ranch employees including his own, and for the following seven months paid himself only $125 a month.

On October 15, 1932, plaintiff brought defendant from the ranch to Sheridan where defendant was to have dinner with a friend. They arrived at the friend's home before the dinner hour, and then had a conversation which we give in plaintiff's language as it appears in the record:

"(Defendant said) 'I don't care to go in at this time, turn out your lights and we will sit here a few minutes and visit, talk,' which we did, and during that conversation he says 'I see that you have reduced your salary along with the other men several months ago. Who gave you the authority to reduce your salary?' And I said 'Nobody. I reduced the other men from ten to twenty per cent. and I thought it no more than right to reduce my own.' In fact I wanted to get the hub (sic) over the hill. Conditions were pretty bad, the market. He said 'I want you the first thing you do to write yourself a check for that $175 for that $25 a month for seven months, and pay yourself up.' All right. He says 'I feel you are underpaid anyhow, Long. You have taken a big interest out here and you have got a lot of responsibility. When you get the ranch restocked there will be a lot more responsibility.' And I said 'Well, Mr. Forbes, there is one thing about it. Mr. Frazier drew $200 a month and his keep, his board and everything, at the ranch, and he didn't do a very good job, as you say, and I have taken a lot of interest and I am only getting $150 a month and boarding myself. I don't see anything right about it,' and he said 'I don't either. I will pay you the $200 a month beginning the time that you went to work until your work is discontinued.' I said 'That's fine,' 'Now,' he says, 'conditions are bad and money is tight, and you better

just let that ride along until later.' I said 'We will let it ride along until we get through working entirely, then I will have a stake to buy myself a home.'

"Q. Now what did you and Mr. Forbes mean when you talked about 'something riding along?'

"A. I meant to leave the money in the business with him, or just let it go.

"Q. What money?

"A. Money for this $50 a month that he promised to pay me, dating back to November 15, 1929, to make me equal to Mr. Frazier.

"Q. Did you rely upon the promise that was then made by Mr. Forbes, that he was going to lay aside $50 a month for you?

"A. Yes, sir.

"Q. Did you believe him?

"A. Oh, yes.

"Q. And in your future work for him following that did you depend upon that promise?

"A. Yes, sir. My wife and I both."

Defendant testified that he had no doubt that there was a conversation at the time and place mentioned by plaintiff, but denied that he then, or at any other time, agreed to pay plaintiff more than $150 a month. His version of the conversation on the subject of raise in salary was that: "Mr. Long had heard that Mr. Frazier had received $200. He said to me he thought his salary should be at that figure, $200. I don't remember whether it was exactly that moment that he said it, or the exact circumstances. I know he did ask to have his salary increased to $200 and I declined." Defendant had in mind that in case the ranch made a profit he would then consider the matter of giving plaintiff a percentage, but as there never was a profit, the matter never came up. He could not remember whether the possibility of this extra compensation was ever mentioned to plaintiff.

The right of trial by jury includes the right to have the jury pass upon questions of fact by determining the credibility of witnesses and the weight of conflicting evidence. See Reid v. Maryland Casualty Co., 63 Fed. (2d) 10. The findings of fact, however, are subject to review by the trial judge who, like the jury, has had the benefit of observing the demeanor and deportment of the witnesses. If he concludes that the evidence is insufficient to support the verdict, he should grant a new trial, under principles stated in Kester v. Wagner, 22 Wyo. 512,, 145 Pac. 748. After the trial judge has given the verdict his approval by denying a new trial, and the case is brought here for review, we must accept the verdict as a final and conclusive finding of the facts if there is any substantial evidence to support it, although we may feel that we would have come to a different conclusion. Cronberg Bros. v. Johnson, 29 Wyo. 11, 22, 208 Pac. 446. It does not seem necessary in the present case to dwell on the meaning of the word "substantial," as used in this conection. See Wilde v. Amoretti Lodge Co., 47 Wyo. 505, 518, 41 Pac. (2d) 508, 512; Koprowski v. Megeath Coal Co., 48 Wyo. 334, 345, 46 P. (2d) 61, 64. We think it clear that plaintiff's testimony quoted above was substantial evidence in proof of the alleged contract, unless it must be rejected as incredible.

We shall discuss briefly some of the matters that the jury may have considered in deciding that the plaintiff's testimony was true. They had to decide who of two witnesses, plaintiff or defendant, should be believed. There was nothing in the evidence to require the jury to believe that the credibility of either witness was affected by any moral defect that would cause him to swear falsely. The conflict in their testimony may have been the result of inattention or forgetfulness of one of them, and the jury may have believed that it was the testimony of defendant that should be challenged on

this ground. He was a man of large business and public interests. For a time he was Ambassador to Japan. In comparison with other distracting affairs, the conversation of October, 1932, may have seemed to him a small matter. On the other hand, to plaintiff it was an important business event not likely to be misunderstood or forgotten.

We have said many times that it is not the function of this court to pass on the credibility of witnesses. Corson v. Wilson, 56 Wyo. 218, 225, 108 P. (2d) 260, 262, and cases cited. It is true, however, that the testimony of a witness should be rejected as not constituting substantial evidence when it cannot be reconciled with other evidence that must be accepted as true. Wilde v. Amoretti Lodge Co., supra; Montgomery Ward & Co. v. Arbrogast, 53 Wyo. 275, 294, 81 P. (2d) 885, 892. Counsel for defendant lay much stress in some statements of other courts quoted in the last-cited case, viz: "There must be more than a conflict of mere words to constitute a conflict of evidence," and "A conflict of testimony * * * * does not arise merely because one witness testifies contrary to another." Such statements, when considered with their context and in connection with the facts of the cases under consideration, were not intended to announce a rule that would prevent the proof of an oral contract by oral testimony.

It is contended that the testimony of plaintiff should be rejected as incredible because it is unreasonable to suppose that defendant would have made the alleged promise. Contracts of employers to raise salaries of employees are every-day occurrences, and a search, by no means exhaustive, shows that the contract may include a promise of additional pay for past services. See Olsen v. Olsen, 149 Wis. 248, 135 N. W. 836; Kerbaugh v. Gray, 212 Fed. 716; Mineral Basin Copper Co. v. Standish 31 Ariz. 65, 250 Pac. 364; Reynier v. Associated Dyeing & Printing Co., 116 N. J. L. 481, 184 Atl.

780, 104 A. L. R. 1002; Joy v. Peacock (Tex Civ. App.) 131 S. W. (2d) 1012. The jury may reasonably have believed there was a reason or motive for defendant's promise. There was evidence tending to show that defendant was a man of generous impulses who probably would not feel at ease in paying plaintiff less for satisfactory service than he had paid Frazier for poor service. There was a good deal of evidence some of which was not in dispute, showing that after October, 1932, plaintiff's duties and responsibilities were increased. He negotiated several purchases of lands that were added to the Beckton Ranch or to another ranch in which defendant was interested, and performed other services probably not contemplated as part of his duties when he was originally employed as manager of the Beckton Ranch. This testimony was introduced for the purpose of supporting the allegations of the second cause of action. The jury's finding against plaintiff on that cause of action did not mean that additional services were not performed, but that they were performed as added duties as manager under the contract alleged in the first cause of action. Defendant's intention to call on plaintiff for such additional services may have been another reason why he was willing to make the promise of October, 1932.

It is argued that it is unreasonable to suppose that defendant would have promised to increase plaintiff's salary during a business depression and while the ranch was being operated at a financial loss. These were matters for consideration of the jury who may have believed that defendant was less interested in profits than in improving and beautifying the ranch, and retaining for that purpose a satisfied and efficient manager.

Plaintiff and defendant both testified that the conversation of October 15, 1932, was not mentioned by either of them to the other in any subsequent conversa-

tion or letter. We think it was for the jury to determine what weight should be given to this circumstance. The way in which defendant's testimony on this subject was brought out may have caused the jury to view the defense with disfavor. Defendant on direct examination testified that, after he had declined to raise plaintiff's salary, plaintiff made no further complaint about not getting more money, and when the defendant's direct examination was concluded there was nothing in his testimony to indicate that he ever heard of any such complaint until the suit was filed. On cross-examination, however, he recalled that some time before the suit was filed his nephew, who in 1939 had succeeded defendant as Managing Trustee and conducted the negotiations that resulted in plaintiff's discharge, informed defendant by letter that plaintiff was demanding more money; but defendant could not remember "that it was exactly $50.00." The nephew, called later as a witness for defendant, was not questioned about this demand. If defendant's testimony in regard to the conversation of 1932 was correct, the request for a raise in salary was refused; if the testimony was full, no reason for the refusal was given. In weighing the testimony, the jury may have thought it strange that the request was not renewed at some time during the following years after plaintiff's duties were increased.

It is generally held that, after two or more trials resulting in like verdicts, an appellate court, reviewing the judgment entered on the last verdict, will not reverse for insufficiency of the evidence except in a very strong case. See Emery v. Hawley, 1 Wyo. 303; Note, Ann. Cas. 1912B, 139. We hold that the jury were not bound to disbelieve the plaintiff and that his testimony was substantial evidence sufficient to support the verdict.

Both plaintiff and defendant testified that when plaintiff was employed as manager of the Beckton

Ranch, it was understood that he should give his entire time to the job. Plaintiff on cross-examination was asked if he had negotiated a sale of the Helvey ranch and received $1000 for his services. The answer was that he had not. Later, Helvey was called as a witness for defendant, and testified that in June, 1939, he paid plaintiff $1000 in cash as a commission for selling some land to Waldo Forbes. When it appeared that the sale had nothing to do with the Beckton Ranch, plaintiff moved to strike Helvey's testimony as irrelevant. Defendant asked that it stand for the purpose of impeaching plaintiff. After the court had said he would strike the testimony, evidently because it was an attempt to impeach plaintiff by contradicting him on an immaterial matter, defendant insisted that the testimony was material for the further purpose of showing that plaintiff did not give his entire time to the management of the ranch. The court then said he would permit the testimony to stand on that point, but not as a matter of impeachment. Defendant claims he was prejudiced by the court's ruling limiting the purpose of the contradictory testimony.

We think defendant was fortunate in having this testimony left in the case even for the limited purpose. It was not contended that plaintff neglected any of his duties as manager of the Beckton Ranch, and there was no request that any issue of that kind be submitted to the jury. The cases seem to hold that full-time employment does not mean that the employee may not have some time that he may use in his personal affairs, or in other business, without breach of the employment contract. See Shoemaker v. Acker, 116 Calif. 239, 48 Pac. 62; Hermann v. Littlefield, 109 Calif. 430, 42 Pac. 443; Johnson v. Stoughton Wagon Co., 118 Wis. 438, 95 N. W. 394.

In considering other questions we assume that defendant's testimony was true. Contentions that there

was no common intent or meeting of the minds, and that the contract is void for uncertainty, seem to be without merit and to call for no discussion. At the trial it was claimed that the contract was void under the statute of frauds, but that claim has been abandoned.

It is contended that there was no consideration for defendant's promise to pay the additional $50 a month. The original contract of 1929 was a promise of defendant to employ and of plaintiff to serve for an indefinite time, commonly called a hiring at will. See authorities cited Casper National Bank v. Curry, 51 Wyo. 284, 297, 65 P. (2d) 1116, 110 A. L. R. 360; Restatement of Agency, § 442. "An employment of this sort, which is terminable at any time, is subject to modification at any moment by either party as a condition of its continuing at all." Norton v. Brookline, 181 Mass. 360, 363, 63 N. E. 930. See M. Shiloff Grocery Co. v. Eberline, 199 Ia. 562, 202 N. W. 86; Mineral Basin Copper Co. v. Standish, 31 Ariz. 65, 250 Pac. 364; American Nat. Ins. Co. v. Teague (Tex. Com. of App.) 237 S. W. 248; Restatement of Contracts, §76, comment (c). The doing of anything beyond what one is already bound to do, though of the same kind, and in the same transaction, may be a good consideration. Pollock on Contract (10th ed.) 181; Williston on Contracts (Revised Ed.) § 102A. The only real issue in the case was the one of fact discussed above. If defendant made the alleged promise, there was no doubt that the expected consideration was given, and the contract completed, when plaintiff continued as manager relying on the promise. The promise applied to past as well as future services, but that is not a ground for holding that there was no consideration, although the past services would not have been a consideration. See Williston on Contracts (Revised Ed.) §§ 134, 137A; Restatement of Contracts, § 83. It has not been contended that there was any reason for dividing defendant's promise for the purpose of hold-

ing that the part applicable to past services could not be enforced. See Williston, *supra*, § 137A, note 2. The case was tried below and argued here on the theory that plaintiff was entitled to recover all that was promised or nothing. See Bagley v. Moulton, 42 Vt. 184, 189; Reymier v. Associated Dyeing & Printing Co., 116 N. J. L. 481, 486, 184 Atl. 780, 104 A. L. R. 1002.

The judgment will be affirmed.

BLUME and RINER, JJ., concur.