**Walla E. LAIBLY, Appellant (Plaintiff below),**

v.

**Anne HALSETH and Elmer Halseth, Appellees (Defendants below).**

**No. 2868.**

Supreme Court of Wyoming.

Nov. 10, 1959.

 

she was appointed administratrix of his estate he evidently died intestate. Thus, she would have been entitled to inherit the whole of the estate after payment of its debts, claims and expenses.

The deceased left certain real estate holdings in Minnesota and other property in Rock Springs, Wyoming, a principal portion of which was what is referred to as the Miner's Home Bar. Following the death of the deceased, the plaintiff, who was in Nebraska when her husband suffered the injuries which took his life, came to Rock Springs and conferred with the defendant Elmer Halseth about the management of the bar and the Wyoming administration of her husband's estate. During these conferences she told Elmer Halseth she wanted to transfer to his wife Anne Halseth, the sister of the deceased, an undivided one-half interest in her late husband's estate in fulfillment of what plaintiff said was the deceased's wish and desire. At the time, the plaintiff's funds were somewhat meager and she sought to borrow $1,400 from defendant Elmer Halseth, who was unable to make the loan in that large an amount. The plaintiff then went to her Rock Springs attorney and there, in company with Elmer Halseth and the attorney for appellees, discussed the proposed transfer of a portion of the plaintiff's interest in the estate of the deceased. Thereafter, plaintiff, Elmer Halseth, and appellees' attorney went to the latter's office where the disputed instrument was prepared and executed by the plaintiff. It is as follows:

"In the Matter of the
Estate of William A.
Laibly, deceased.

"Assignment of Interest

"Know All Men By These Presents; That I, the undersigned, in order to carry out the wishes and intentions of said William A. Laibly, and in consideration of love and affection for Anne Halseth, sister of said William A. Laibly, and in further consideration of

---

Frank R. Schofield, Green River, for appellant.

Edwin V. Magagna, Rock Springs, for appellees.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

A widow brought this action against her sister-in-law and her sister-in-law's husband, seeking to set aside an assignment which the widow made shortly after the death of her husband. The instrument assigned an undivided one-half interest in the estate of the deceased to his sister, Anne Halseth, one of the defendants. On trial to the court, judgment was rendered in favor of defendants and the plaintiff appeals.

As far as the record shows, the plaintiff was the sole heir of the deceased, and as

Elmer Halseth advancing and loaning the sum of $650.00 to me, and in consideration of the sum of $100.00, the receipt whereof is hereby acknowledged, do by these presents, give, grant, bargain, sell, assign, transfer, and set over unto Anne Halseth, sister of said William A. Laibly an undivided one-half interest to, in, and of the estate of William A. Laibly, deceased, and I do hereby authorize the court to make distribution to said undivided one-half interest of all the property of said estate, to said Anne Halseth.

"To have and to hold the same unto the said Anne Halseth, her heirs, executors, administrators and assigns forever.

"Dated this 6th day of June, 1955.

"/s/ Mrs. Walla E. Laibly

"The State of Wyoming ⎤ SS.
County of Sweetwater ⎦

"I, Edwin V. Magagna, a Notary Public in and for said County, in the State aforesaid, do hereby certify that said Mrs. Walla E. Laibly personally known to me as the person whose name is subscribed to the annexed instrument appeared before me this day in person and acknowledged that she signed, sealed and delivered said instrument of writing as her free and voluntary act, for the uses and purposes therein set forth.

"Given under my hand and seal this 6th day of June, 1955.

"My Commission expires November 7, 1956.

"/s/ Edwin V. Magagna

"(Seal)        Notary Public."

Later, plaintiff returned to Nebraska and wrote several letters to defendants, making reference to the business affairs of the estate in Wyoming and to properties in Minnesota.

Evidence most favorable to defendants shows that the relationship between plaintiff and defendants, following the death of the deceased on May 21, 1955, and until this suit was filed on June 12, 1957, was friendly as evidenced by letters from plaintiff to defendants; that when plaintiff requested defendant Elmer Halseth, who was a school teacher, to lend her $1,400, he explained he did not have that much money but he would lend her $650 and make her an outright gift of $100. This he did, taking from plaintiff her promissory note in the sum of $650. Plaintiff then left Rock Springs and for some time continued to correspond with defendants in a friendly manner concerning the handling of the estate's properties in which both she and Anne Halseth were then interested. However, after the lapse of two years, plaintiff brought this action to set aside the assignment she had made to Anne Halseth.

In her pleadings, plaintiff claimed that the assignment was given as security for a loan; that the assignment was void for lack of consideration; and that the assignment should be set aside on the ground the consideration therefor, if any given, was so inadequate as to shock the conscience of the court and was unconscionable.

Appellant now asserts there was error in the court's concluding:

1. The assignment was not given as security for the $650 loan.

2. The assignment was not void because there was no consideration.

3. The assignment should not be set aside because the inadequacy of consideration shocks the conscience.

■ There is an entire absence of evidence that the assignment was given as security for the $650 loan to the plaintiff. The testimony is that because of plaintiff's need and her in-law relationship to his wife, defendant Elmer Halseth loaned her $650 without taking any security whatsoever, receiving only her promissory note evidencing the debt. Appellant's first contention is, therefore, overruled.

■■ Although the $650 was only a loan, the inducement for its making was plaintiff's agreement to make the assign-

ment, at least it so appears from the assignment itself.

Conversely, the inducement to make the assignment was obtaining the $650 loan. Plaintiff admits $650 was paid to and received by her, so the consideration for the assignment was given and accepted.

In the rehearing of Hamilton v. Diefenderfer, 21 Wyo. 266, 274, 277, 133 P. 1081, 1082; Id., 20 Wyo. 138, 122 P. 88; 21 Wyo. 266, 131 P. 37, this court commented:

"* * * Though the price be inadequate, and that fact may be considered in determining the question of good faith, it may nevertheless be a valuable consideration within the legal meaning of that term, * * *."

And in Long v. Forbes, 58 Wyo. 533, 548, 136 P.2d 242, 246, 247, 158 A.L.R. 224, our court said:

"* * * The doing of anything beyond what one is already bound to do, though of the same kind, and in the same transaction, may be a good consideration. * * *"

In Estrada v. Hanson, 215 Minn. 353, 10 N.W.2d 223, 225, 226, where the making of a loan was questioned as being a sufficient consideration, the court said:

"* * * The fact that she is under obligation to repay the loans does not invalidate them as consideration. * * *"

The court in the same opinion observes that questioning the loan as a consideration

"* * * is simply another method of attacking the adequacy of consideration. It is an elementary principle of contract law that courts will not inquire into the adequacy of consideration. 'It is unnecessary that a consideration should be adequate. It is sufficient if it is something which the law regards as of value.' 2 Dunnell, Dig. § 1756."

Thus the making of the loan comes well within the many definitions which are given of valuable consideration, such as profit or benefit to the assignor or forbearance or detriment given or suffered by the assignee, 6 C.J.S. Assignments § 70, pp. 1121, 1122; a benefit to the promisor or a detriment to the promisee, 12 Am.Jur., Contracts, § 79, pp. 570–574; performance of an act (the making of a loan) by a promisee which he is not legally obligated to perform, 12 Am.Jur., Contracts, § 80, pp. 574–576. In 1 Williston on Contracts, 1936, § 102A, p. 327, it is said, "It [detriment] means giving up something which immediately prior thereto the promisee was privileged to keep * * *." Certainly defendant Elmer Halseth was privileged to keep his money and it could be he will never get it back.

With respect to the transaction being unconscionable and the monetary consideration from Elmer Halseth to the plaintiff being inadequate, this standing alone is insufficient, even in equity, to disturb the assignment.

In 17 C.J.S. Contracts § 127, p. 474, the law relating to adequacy of consideration is concisely put in these words, "The slightest consideration is sufficient to support the most onerous obligation; * * *." Agreement with that statement is found in opinions there cited from courts of thirty-one states of the Union, as well as federal courts. In 12 Am.Jur., Contracts, § 122, p. 615, appears the equally unequivocal statement, "The rule that the adequacy of the consideration is immaterial has been undoubted ever since the concept of consideration began to be developed." Both this statement and the reasoning which follow it are also amply supported by authorities there cited. It should go without saying that where fraud or imposition enters the picture a different rule obtains, but in the case before us, where the obvious reaction of the trial court was that there had been neither fraud nor imposition, the preponderant rule must be recognized. The nearest we have found in seeming dissent are the few cases which hold gross inadequacy of consideration is itself a badge of fraud and may amount to proof of fraud, oppression or undue influence. See 17 C.J.S. Contracts § 128, pp. 475, 476. But here

again it is the presence of fraud, oppression or undue influence—not the inadequacy of consideration—that has on occasion moved courts to set aside instruments. Although it is not unnatural for courts to more closely scrutinize transactions where the consideration is grossly disproportionate to the benefits received,

> "The mere fact that one of the parties to a contract drove a hard bargain, or that there was inadequacy of price or consideration, will not in itself show fraud avoiding a contract, nor is an unprofitable contract necessarily unconscionable, * * *." 17 C.J.S. Contracts § 154a, pp. 505, 506.

And 1 Williston on Contracts, 1936, § 115, p. 389, says:

> "It is an 'elementary principle that the law will not enter into an inquiry as to the adequacy of the consideration.' This rule is almost as old as the law of consideration itself. * * *"

The contract came to an end and ceased to exist when the money was loaned and the assignment executed and delivered. As between the parties to the transaction, everything that was to be done on both sides had been completed and performed. At the time of executing the assignment the assignor was possessed of a vested right and interest in her deceased husband's estate and although she did not have an immediate right of enjoyment in the subject matter of her interest and estate therein, she had a present fixed right of future enjoyment upon the final settlement and distribution of the decedent's estate. See 31 C.J.S. Estates § 5, p. 13 et seq.

If there had been some evidence of fraud which the lower court elected to believe, that fraud coupled with the inadequacy would unquestionably be grounds to set aside the assignment, but as has been pointed out, inadequacy of consideration standing alone, in the absence of fiduciary or trust relationship, is insufficient to defeat the transfer. Where fraud is not shown, the mere fact that the consideration may have been slight is insufficient to vitiate the assignment. There was neither confidential, fiduciary or any other type of relationship between the plaintiff and the defendants, or either of them, which gave them special opportunity to impose upon the plaintiff, and the trial court was justified in holding the plaintiff was not imposed upon. Plaintiff acted of her own free will, on her own volition, and in fact the evidence the court was entitled to believe showed she was the one who initiated the proposal to transfer the interest evidenced by the assignment.

Affirmed.