Rodney P. SOPPE and Mary M. Soppe,
Appellants (Defendants below),

v.

Paul BREED, Appellee (Plaintiff below).

No. 4122.

Supreme Court of Wyoming.

Jan. 4, 1973.

Robert L. Duncan, Cheyenne, for appellants.

R. Michael Mullikin, Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

Breed, appellee herein, filed his complaint naming Rodney P. Soppe and Mary M. Soppe and Ralph Wingert as defendants, seeking a declaratory judgment that he held a valid and subsisting lease covering the NW ¼ of Section 28, T. 14 N., R. 63 W. of the 6th P.M. in Laramie County, Wyoming, excepting only an 18.7-acre tract. He also sought an injunction to restrain defendants Soppe from cultivating this land or breaching the soil bank agreement. This latter had become moot prior to trial and will not be further mentioned. In the alternative plaintiff sought damages. Service was not obtained on defendant Wingert and he was not a party to the proceedings. The district court entered judgment solely upon the declaratory judgment portion of the prayer, holding that defendants were bound by the terms of the lease, but made no finding as to damages. Defendants Soppe appeal from this judgment.

On February 10, 1966, Ralph Wingert, who was the owner of record of the above-mentioned premises, entered into the following agreement with Breed:

### "LEASE AGREEMENT

"Party of the First Part Mr. Wingert of 4342 West Artesia—Fullerton, Calif. Party of the Second Part Paul D. Breed Party of the First Part agrees to lease farm land located in Laramie, County Wyoming to party of the second part. Legal Description of Land NW ¼ of Section 28. This land to be entered in to Cropland adustment [sic] program, the proceeds from soil bank is [sic] to be distributed 50% to the party of the first part and 50% to the party of the second part. The farm expenses of operation of farm to be furnished by party of the second part with exception of fence materials. This lease to run for a period from January 1, 1966 thru December 31, 1976."

 On September 10, 1969, Wingert conveyed by warranty deed this land to Rodney P. and Mary M. Soppe, who denied Breed had any lease or interest in the land. They base this claim upon the grounds that the lease is void because of uncertainty of description and because it is without valid consideration. They further assert that this instrument had no effect as to them because it was not recorded and that this agreement was terminated under the applicable regulations of the A.S.C.S.[1] This instrument omits the range and township wherein the land lies and the court received evidence to supply the deficiency, which appellants contend was error. Reliance is placed upon the proposition that every enforceable instrument for conveyance of an interest in land must contain a description of the land and that a totally inadequate description cannot be cured by parol evidence, contending that this was a patent and not a latent defect. Appellants cite for this proposition 3 Thompson on Real Property, § 1084, p. 299 (1959 Repl.). They do not, however, include the total statement from that work. The same section states generally that such a description may be completed by parol evidence if it does not introduce a new description or change the one appearing in the instrument. This work states that the purpose thereof is to aid and not contradict the description. We have heretofore recognized that the limitations imposed by the parol evidence rule are directed at a showing which would contradict, vary, or alter the terms of the instrument, Parkinson v. Roberts, 78 Wyo. 478, 329 P.2d 823, 826, and that parol evidence may be received if it does not tend to do any of these. It must be remembered that the parol evidence rule is a rule of substantive law, North American Uranium, Inc. v. Johnston, 77 Wyo.

---

1. Denoting the Agricultural Stabilization and Conservation Service. The initials will be used for brevity hereafter. Reference will also be made to the "soil bank," which includes land covered by said program under agreement to this agency.

332, 316 P.2d 325, 331; Bushnell v. Elkins, 34 Wyo. 495, 245 P. 304, 306, 51 A.L.R. 13.

This first cited case further notes the difficulties and variations that appear in the cases applying this rule. An examination of cases convinces us that the application is dependent in most instances upon the factual situations. Because of this we will discuss the evidence in this case without reference to its admissibility.

Our first consideration must be directed to the lease agreement to determine if it was void for lack of description. If we were to so hold no further discussion would be indicated. A case which is particularly applicable on its facts is Halladay v. Hess, 147 Ill. 588, 35 N.E. 380. This case involved a deed covering lands in Section 8 without mention, as here, of the range and township, there being several sections numbered 8 in that county. Parol evidence was held to be properly received and considered in that case to explain where these lands were located. The Georgia Supreme Court in the case of Little v. Saunders, 163 Ga. 842, 137 S.E. 49, 50, held that where land was being designated only by lot numbers—the lots bearing the same numbers as those in other districts—evidence was admissible to show ambiguity and that lessor leased the lots actually owned by him. Although factually quite different, the Supreme Court of the United States in the case of Ryan v. United States, 136 U.S. 68, 10 S.Ct. 913, 919, 34 L.Ed. 447, wherein an offer and acceptance included the section but not the range and township, made this rather pertinent remark:

"* * * the presumption is not to be indulged that Ryan owned, in or near the village of Sault Ste. Marie, two tracts of land, in different townships and ranges, which would answer the description of [here follows the description of land in that case]. * * *"

■■ Breed entered, occupied, and cultivated these premises and placed them in the soil bank. The parties had agreed thereby as to the premises involved and knew the land intended to be covered. The lease is not void for uncertainty of description under these circumstances as the parties may by their conduct locate the demised premises, Johnson v. City of Lincoln, 174 Neb. 837, 120 N.W.2d 297, 303; Shepard Warehouses, Inc. v. Scherman, S.Ct., 63 N.Y.S.2d 421, 424–425; 51C C.J.S. Landlord and Tenant § 214, p. 545; 49 Am.Jur. 2d Landlord and Tenant, § 34, p. 78. The trial court received evidence supplying the omission of the township and range, which clearly establishes the land which was intended to be leased and its complete description. Another significant fact was that Wingert was the owner of the NW ¼ of Section 28 in the township and range above mentioned, Ryan v. United States, supra; Little v. Saunders, supra. It was stipulated by the parties that the land described in the complaint was the land covered by the A.S.C.S. agreement. Appellants apparently were the only ones who were unable to determine what premises this lease covered.

■ The attack upon the validity of the consideration as expressed must be first approached in light of a rather general rule that consideration need not necessarily be labeled as such, 17 C.J.S. Contracts § 73, p. 756. The record is clear that Breed complied with the condition of the lease, i. e., "This land to be entered in to Cropland adustment [sic] program, the proceeds from soil bank is [sic] to be distributed 50% to the party of the first part and 50% to the party of the second part." The cropland adjustment agreement entered into by Breed and approved by Wingert pursuant to the lease conditions imposed substantial burdens on Breed's enjoyment and use of the leased premises, removing 73 acres thereof from any crop production, and an agreement to comply with approved practices which involved substantial labor in order to devote it to "Perenial [sic] Veg. Cover" for ten years. It may be further observed that appellants neither make any strong argument nor cite any authority for the proposition of lack of consideration. The lease by Wingert of

this land constitutes a consideration, 51C C. J.S. Landlord and Tenant § 210b, p. 537. Breed's promise to enter the land in the soil bank is a consideration inasmuch as he had no legal duty to do so as an ordinary lessee, Long v. Forbes, 58 Wyo. 533, 136 P.2d 242, 247, 158 A.L.R. 224, and each has by virtue of this contract received a sum approaching $1000 from the A.S.C.S.

■ The Soppes' succeeding contention is that because of the failure to record this instrument it was void as to them by virtue of § 34–20, W.S.1957. The trial court found that prior to the conveyance Soppes were put on due inquiry and that upon reasonable investigation the fact of the existence of this agreement could have been determined. We find no quarrel with this finding as will be evidenced by the facts. To avail themselves of this statute and cut off the rights of Breed, Soppes have the burden of proving they were purchasers in good faith for valuable consideration and without notice, York v. James, 60 Wyo. 222, 148 P.2d 596, 598; North American Uranium, Inc. v. Johnston, 77 Wyo. 332, 316 P.2d 325, 328–329.

■ Wingert advised Soppe at the inception of the negotiations, when he asked to lease this land, that it was in the soil bank program but there would be no trouble in getting it out and he would take care of this. After receipt of this information Soppe went to the A.S.C.S. office to inquire about the status of the land. The Breed file was produced, which contained not only a copy of the lease but the cropland adjustment agreement executed by Breed. This file was discussed, with Soppe making various inquiries, but at no time did he ask to see the lease or inquire about it. In fact he specifically denies that he knew of the lease. He did, however, ask whether Mr. Breed would be forced to refund the payments received if the cropland adjustment agreement were

broken. He made no effort or inquiry of Breed to determine what his interest was. His questions to the A.S.C.S. officials clearly imply a knowledge of some involvement and were intended only to ascertain if the land could be withdrawn from the soil bank. In the North American Uranium case, supra, those claiming by virtue of this statute had been advised of the existence of some agreement and that there probably would be a controversy. They did not inquire of Johnston, claimant under the unrecorded contract, but relied solely on the statements of the record owners. The deliberate refusal to make inquiry and reliance upon these statements were deemed significant. In this case the owner, Wingert—although no evidence appears in the record as to his exact advice, he being unavailable—admittedly did advise that the land was in the soil bank, triggering Soppe's inquiry of that office. The thrust of his inquiry was directed at release of the land from this agreement by virtue of loss of control by Wingert, and was confined to that area. It may be fairly said that about all Soppe's testimony shows is that he did not *know of this lease* and did not inquire as to the nature of Breed's claim, of which he knew.

■ Appellants' final contention is that the lease agreement, if they had notice and it is binding, was terminated by the action of Wingert in selling the land and giving immediate notice to the A.S.C.S. office in Cheyenne. No authority for this proposition is urged in this argument. To give effect to such a contention would be to insert in this lease agreement a clause making the lease term subject to sale. This we cannot do. The witness Kane of the A.S.C.S. office, testifying as a witness for appellants, did say his department asserted no control over the relations of the parties, which seems self-evident.

Affirmed.